# Tuscaloosa County v. Foster.

### Action for Damages for Deceit in Sale of a Ferry.

[Decided February 18, 1902.]

1. *Ferries; statutes relating to same subject matter, how construed, Code, § 2500, 2501, 2503, 2506, 2509, 2514, 5553, 5556.*—Sections 2500, 2501, 2503, 2506, 2509, 2514, 5553, and 5556 of the Code, relating to the same subject-matter, and severally constituting integral parts of the statutory system for the establishment, maintenance and regulation of ferries, are to be considered and construed together, their provisions made to harmonize, and each accorded a field of operation if practicable.

2. *Same; statutes construed with reference to ferries crossing a stream with a public road.*—Under the statutory system regulating ferries, (Code, §§ 2500, 2514, 5553, 5556), all ferries crossing a stream with a public road must be licensed; the owner must give bond; his rates of charge are prescribed by the commissioners' court; and he is subject to penalties for overcharging and for keeping a ferry without a license; and this, though he be a riparian owner at the point where the public road crosses the stream, within the meaning of § 2514.

3. *Same.*—No ferry can be established or licensed, under any section of the Code (except § 2514), except at a public road crossing.

4. *Same.*—All the provisions of Article III, Chapter 59, of the Code, outside of § 2514, have reference to licensed ferries.

5. *Same; riparian owners, Code, § 2514.*—Under section 2514 of the Code, a riparian owner may maintain as many ferries as he pleases along the stream, elsewhere than at the intersection of the stream and a public road, without giving bond, without a license, without regulation of rates by the commissioners' court, and without being amenable to the penalties prescribed in §§ 2509, 5553 and 5556.

[Tuscaloosa County v. Foster.]

6. *Same; rights of riparian owners at bisection of navigable stream and public road; Code, §  2514.*—Although, under § 2514 of the Code, a riparian owner has a qualified preferential right to maintain and operate a ferry at the bisection of a navigable stream with a public road, upon the commissioners' court determining to establish a ferry at such point, he has not such right until he has taken out license and given bond as required by other sections of the Code.

7. *Same; power of commissioners' court to discontinue ferries.* The commissioners' court may, at the end of a license period, disestablish and discontinue a ferry which a riparian owner has been licensed to operate.

8. *Same; term of license; how fixed.*—The commissioners' court may fix the term of a license to operate a ferry, at their discretion, for any period not exceeding ten years.

9. *False representations as to right to operate a ferry; general charge; acquiring of ferry franchise by prescription.*—Where one is sued for damages for falsely representing that he had the exclusive right, privilege and franchise to operate a certain ferry at the intersection of a public road and a navigable stream, and the evidence is undisputed that he had no license and had given no bond, such representations are false (unless such franchise may be acquired by prescription, as to which *quere.*)

10. *False representations as to matter of fact; defendant's knowledge of falsity.*—In an action for damages for deceit, if the representations were as to a matter of fact, it is immaterial whether the defendant knew them to be false or not.

11. *False representations as to matters of opinion, when will not support action.*—Representations, constituting the expressions of opinion merely, will not support an action for damages unless they were knowingly false, were made with intent to deceive, and were accepted and acted upon as true.

12. *Same; when question for jury.*—If it is doubtful in any case as to whether representations are as to matters of fact or are merely expressions of opinion, the question is one for the jury, as is also the question (if they were expressions of opinion) whether they were consciously false, intended to deceive, etc.

13. *Deceit; defenses; acquisition of ferry by prescription; general issue.*—In an action for deceit, wherein the defendant is charged with having falsely represented that he had the exclusive right, privilege and franchise to operate a certain ferry, the question as to whether he had acquired that right by prescription, or could acquire it thereby, may come up under the general issue,—a special plea not being necessary.

APPEAL from Tuscaloosa Circuit Court.

Tried before Hon. S. H. SPROTT.

This action was brought by the appellant, Tuscaloosa county, against J. Luther Foster, to recover damages for the alleged deceit practiced by the defendant upon the plaintiff in the sale by the defendant to plaintiff of a certain ferry, ferry rights, franchises and privileges, described and known as Foster's ferry in Tuscaloosa county.

The complaint contained four counts. In each of these counts it was alleged that, by act of the General Assembly, Tuscaloosa county was authorized to build and construct a bridge across the Warrior river at a point on said river, where the river was intersected by the public road going from Tuscaloosa to Eutaw, and was further authorized, for the purpose of constructing said bridge, to purchase what was known as Foster's ferry, which was a ferry operated across the Warrior river at the place where said public road leading from Tuscaloosa to Eutaw intersected the said river. It was then alleged in the complaint that in pursuance of the authority so granted, the commissioners court of Tuscaloosa county opened negotiations with the defendant, J. Luther Foster, who professed to be the owner of said ferry, and purchased from him said ferry and 4 acres of land, paying therefor $2,900. That in the negotiations, J. Luther Foster represented to the commissioners court that he was the owner of said ferry and had the exclusive right to operate said ferry, and that no other person could operate a ferry within two miles thereof along the Warrior river, and that said representations as to the exclusive ownership, right, privilege, and franchise of said J. Luther Foster over said ferry were an inducement to the commissioners court to pay said Foster the sum of $2,900, which sum was greatly in excess of the value of the property that was really purchased; that the court of county commissioners relied upon this statement of said defendant and that thereby they were induced to pay $2,500 more than the property purchased was really worth, which is the amount sued for in the said action. It was then averred in each of the counts of the complaint that as a mat-

ter of fact the defendant did not own the right, franchise or privilege for operating said ferry, had no license therefor as required by law, and the representations made by him were false and fraudulent, which resulted in damage to the plaintiff to the extent of $2,500, the amount sued for. The counts of the complaint were substantially the same, except that in two of them it was averred that the representations were made by the defendant knowing that they were false, while the other two did not contain such averments. The defendant filed several special pleas to which demrrers were interposed. Thereafter the defendant filed three special pleas. The plaintiff's demurrer to the third plea was sustained. The first and second pleas, upon which issue was joined, were as follows: "1st. Comes the defendant and for a first plea denies the allegations of the complaint. 2d. Comes the defendant and for a second plea, says that the plaintiff was not damnified in any sum whatsoever by reason of its said purchase, because he says that he had a prescriptive right to have and operate the said Foster Ferry; for that he and those from whom he acquired said ferry, and the approaches thereto on both sides of the Warrior river had been in open, exclusive, adverse and uninterrupted possession and control of said ferry for a period of much more than twenty years prior to the aforesaid sale to the plaintiff; and that defendant and those under whom he claims have for the aforesaid long period of years used and operated the same, as their very own, openly, notoriously and exclusively and adversely."

To the second plea the plaintiff demurred upon the following grounds: "1st. Said plea does not set up any defense other than what could be made under the plea of the general issue. 2d. Said plea does not aver facts showing that the defendant had acquired the right to operate said ferry by prescription." This demurrer was overruled, and the trial was had upon issue joined on these pleas.

The evidence for the plaintiff tended to show that in negotiating for the purchase of said ferry, the defendant at various times stated to different members of the court of county commissioners, and also to all of the members

[Tuscaloosa County v. Foster.]

in court assembled, that he owned said ferry and had the exclusive right, privilege and franchise of operating the same. Two of the members of the court of county commissioners, as witnesses, stated, that these inducements by the defendant induced them to make the purchase. It was further shown that the defendant owned the land on either side of the river and that the four acres which were purchased, together with the ferry, were worth not exceeding $50 an acre.

The evidence for the defendant tended to show that he did not make such representations and never stated that he had the exclusive right and privilege and franchise of operating said ferry. It was further shown by the evidence for the defendant, that he purchased the ferry from the heirs of John C. Foster in 1894, and that said ferry had been operated by John C. Foster and his father from whom he derived it, for 50 or 60 years.

It was shown without conflict that the license to operate said ferry had been issued by the court of county commissioners of Tuscaloosa county to John C. Foster on February 11th, 1889, and this license gave the privilege of operating said ferry for a term of ten years, and that after the expiration of ten years from the issuance of said license, no other license had been issued by the court of county commissioners.

The deed from the defendant to the plaintiff was executed on May 2, 1899. It was further shown without conflict that the defendant had no license, franchise or charter which authorized him to operate said ferry, and that at the time the defendant sold the property to the plaintiff, the license which had previously been issued to John C. Foster had expired.

Upon the introduction of all the evidence, the court at the request of the defendant, gave the general affirmative charge in his favor. Thereupon the plaintiff took a non-suit with bill of exceptions.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the overruling of the demurrer to the defendant's second amended plea, and the giving of the general affirmative charge in favor of the defendant.

[Tuscaloosa County v. Foster.]

VAN DE GRAAFF & VERNER, for appellant. (1.) Foster had no exclusive and absolute right to operate the ferry, under section 2514 of the Code, his only right being a preferential right in obtaining a license.—Code, § 2514; *Collins v. Ewing*, 51 Ala. 102; *State v. Talladega Com. Court*, 3 Port. 412; *Dyer v. Tuscaloosa Bridge Co.*, 2 Porter, 303. (2.) It is not necessary to allege and prove *scienter*, in an action for deceit in the sale of chattels or real estate.—*Monroe v. Pritchett*, 16 Ala. 785; *Thweat v. McCloud*, 56 Ala. 375; *Joseph v. Seward*, 71 Ala. 599. (3.) The misrepresentation of a material fact, upon which a party to a contract has a right to rely and does rely, whereby he is damaged, is a fraud in law, though innocently made.—*Davis v. Betts*, 66 Ala. 206; *Perry v. Johnson*, 59 Ala. 653; *Einstein v. Marsh*, 58 Ala. 161. (4.) Where one sells land and represents that he has a good title, and the purchaser relies on the statement, he cannot be said to have been negligent because he did not examine the records. *Young v. Harris*, 2 Ala. 112; *Bailey v. Jordan*, 32 Ala. 53: *Baptiste v. Peters*, 51 Ala. 160; *Baker v. Maxwell*, 99 Ala. 558.

FITTS & FITTS, *contra*.—(1.) An adverse and uninterrupted user for 20 years gives a prescriptive right to operate a ferry.—*Milton v. Haden*, 32 Ala. 30; s. c. 35 Ala. 230; 12 Am. & Eng. Ency. of Law (2d ed.), 1098. (2.) Foster's right to have and operate the ferry was perfect, and arose from his owning both banks of the river.—Code, §§ 2514, 2503. (3.) Such right was only subject to have his rates of tolls fixed by the commissioners under § 2501 of the Code. (4.) It being the duty of the commissioners to know whether Foster had a license, his representation that he had will not authorize a recovery, though false.—14 Am. & Eng. Ency. of Law, (2d ed.), 115; *N. & O. & Ala. C. & M. Co. v. Musgrove*, 90 Ala. 428; *Johnson v. Rogers*, 112 Ala. 578; *Crown v. Carriger*, 66 Ala. 590; *Milton v. Haden*, 32 Ala. 30; *Jordan v. Pickett*, 78 Ala. 339; *Steel v. Kinkle*, 3 Ala. 357; *Davis v. Betts*, 66 Ala. 210. (5.) The representation, if made and false, was not of a material matter, and resulted in no injury to the buyer.—*Rice v. Gil-*

*braith,* 119 Ala. 426; 5 Am. & Eng. Ency. of Law (1st ed.), 335. (6.) The misrepresentation was as to a matter of law, and a mere opinion, and not shown to have been knowingly false, made with intent to deceive.—*Jordan v. Pickett,* 78 Ala. 339; *Davis v. Betts,* 66 Ala. 210; *Tabor v. Peters,* 74 Ala. 96; *Wilcox v. Henderson,* 64 Ala. 535.

Upon rehearing: The construction placed by the court upon section 2514 is not necessary to make the statute law relative to ferries harmonious, and it narrows the natural and ordinary import of the language used in the section. A construction more consistent with its language may be arrived at, and yet the entire system may be harmoniously enforced, as follows: By giving section 2514 the construction indicated by its language, it being construed as an absolute and self-executing grant to riparian owners in every instance to operate a ferry, regardless of location; and making this riparian owner and ferryman subject to the county commissioners in the matter of tolls, under section 2501, and punishable under sections 2509 and 5556; and leaving the issue of ferry license to the riparian owner discretionary with the county commissioners, and according such riparian owner no exclusive four-mile right (under section 2506) unless he has been granted a license by the commissioners court.—*Cox v. Easter,* 1 Porter, 130; *Dyer v. Tuscaloosa Co.,* 2 Porter, 296; *State v. Commissioners,* 3 Porter, 412.

. McCLELLAN, C. J.—Section 26 of Art. I, constitution of 1868, ordains: "That all navigable waters shall remain forever public highways, free to the citizens of the State, and of the United States, without tax, impost or toll imposed; and that no tax, toll, impost or wharfage shall be demanded or received from the owner of any merchandise or commodity, for the use of the shores, or any wharf erected on the shores, or in or over the waters of any navigable stream, unless the same be expressly authorized by the general assembly." This ordinance is section 25, Art. I. of the present constitution. By act of assembly, approved December 8th, 1868, "To

carry into effect Paragraph 26, Article I, of the Consti-
tution of Alabama," it was provided: "That riparian
owners upon the navigable and other waters of this
State, who maintain in good order, for public conven-
ience, erections and ferries upon the banks or shores
of said waters, shall be entitled to charge usual and
reasonable rates for the use thereof, or such rates as are
prescribed in the several acts heretofore passed authoriz-
ing such erections or ferries, or agreed on by said owners
with the corporate authorities of any city or town or
county in which they are situated; *provided,* No erection
or structure, or ferry of any kind, shall be permitted to
injuriously affect the rights of navigation in said
waters." This statute is embodied in the Code of 1896
as section 2514, and there constitutes a part of article
3, chapter 59, which deals with bridges, causeways and
ferries, and provides a system of licensing ferries. Sec-
tion 2503, so far as pertinent to the present case, is as
follows: "On application for ferries, where the banks
on each side belong to the same person, he is entitled to
prior right of establishing a ferry; when the banks be-
long to different persons, the court may grant the lic-
ence at its election, to either of such owners making the
application; but should any person not the owner of
the land on either bank of the river where it is proposed
to establish a ferry, make application for a license, he
shall be required to produce before the court a state-
ment in writing from the owner thereof, saying that he
is not an applicant for such license.   *   *   * Such lic-
ense for ferry shall be granted only at the crossing of a
river at a point where a public road has been estab-
lished." Section 2500 of the Code requires that all lic-
ensees shall enter into bond with surety, to be approved
by the judge of probate, in a sum not exceeding $2,000,
payable to the county and conditioned to keep
safe and convenient boats, with a sufficient
number of ferrymen, and to keep the banks on
each side of the water course in good repair.
Section 2501 authorizes the commissioners' court to fix
rates of ferriage, and section 2509 prescribes a penalty
for excessive charges. Section 2506 provides: "No lic-
ensed ferry must be established on the same water

[Tuscaloosa County v. Foster.]

course within two miles of any other, unless within that distance of some town or city containing not less than five hundred inhabitants." Section 5553 of the (criminal) Code provides: "Any person who keeps any ferry * * * for ferriage or toll, without license, must, on conviction, be fined not less than twenty, nor more than one hundred dollars," etc., etc.; and section 5556 declares that "any keeper of a public ferry * * * who demands or receives from any person a higher rate of toll than is prescribed by the court of county commissioners, is guilty of a misdemeanor." All these sections, 2500, 2501, 2503, 2506, 2509, 2514, 5553, and 5556 — relate to the same subject matter, are severally integral parts of the statutory system for the establishment, maintenance and regulation of ferries, and must be considered and construed together, their provisions made to harmonize and each be accorded a field of operation if practicable. So reading and interpreting them, it is in the first place clear that all ferries crossing a stream with a public road must be licensed; the owner must give the bond required by section 2500; his rates of charge are prescribed by the commissioners' court under section 2501; he is subject to the penalty prescribed by section 2509, and to the punishment prescribed by section 5556 for overcharging, and he is guilty of a misdemeanor and punishable as prescribed by section 5553 if he keeps a ferry without a license. And all this though he may be a riparian owner—the owner of the bank or shore upon both sides of the stream—at the point where the public road crosses the water course, within the meaning of section 2514. This construction leaves an ample field for the operation of that section. No ferry can be established or licensed under the other sections except it be at a public road crossing. Under section 2514 the riparian owners may maintain as many ferries as they please along the stream elsewhere than at the intersection of the stream and a public road, without giving bond, without a license, without regulation of rates, at least so long as they charge usual and customary rates, by the commissioners' court, and without violating or being amenable to the penalties or punishments pre-

scribed by sections 2509, 5553, and 5556, those sections and indeed all the provisions of article 3, Ch. 59 of the Code outside of section 2514 having reference only to *licensed* ferries. And this section 2514 has yet another field of operation in that it confers upon the riparian owner of the banks of a stream at a point where it is bisected by a public road a priority of right to a license to maintain a ferry upon the commissioners' court determining to establish a ferry at that 'point provided he executes the statutory bond. But it is discretionary with the court to establish a ferry at any such place or not. Navigable streams as defined in our law—streams of sufficient width and depth for valuable floatage—are often not too deep at ordinary stage to be fordable, so that in many cases the public interests would be best subserved by leaving them free to the passage of the people; and whether this is true of a particular stream at a particular crossing the court must decide. If it so determines the riparian owner can no more interpose any legal objection to its action than a stranger. It is only when the court determines that a ferry is necessary, and resolves upon licensing the keeping and maintenance of a ferry at such a place that the preferential right of the riparian owner to a license to operate such ferry comes into existence at all; and even then, we apprehend, his right is a qualified not an absolute one, depending upon a consideration of all the circumstances by the court looking to the attainment of the greatest public good at the least private injury.—*Cox v. Easter,* 1 Port. 130. And when a ferry has been established and the riparian owner has been licensed to maintain and keep it, he has no legal footing to insist that it shall be maintained and he be licensed indefinitely; but, to the contrary, the commissioners may, certainly at the end of a license period, disestablish and discontinue the ferry. And so, of course, the commissioners after determining upon the establishment of a ferry, or the continuance of one already established may fix the term of license at their discretion for any period not exceeding ten years, so that if they have resolved upon building a bridge, for instance, they may issue a license for the

26s

time necessary to that end only, or having need of the banks at the point of the ferry crossing for the erection of a bridge, they may discontinue the ferry at once and decline to issue any license. So it is that notwithstanding the provisions of section 2514, and the qualified preferential right of the riparian owner under them,   it   is manifest that until he has received a license he has no more of right or of privilege or of franchise to maintain a ferry at the bisection of a public road and a navigable stream than a stranger would have; and he, as would the stranger, and to the same extent as the stranger, would violate the criminal statute to which we have referred if he attempted to keep such ferry without a license.

Applying the foregoing conclusions of law to the case in hand (a statement of which we leave to the reporter) the conclusion of fact must be that if the defendant made the representations with   which   the   complaint charges him as to his having the exclusive right, franchise or privilege to maintain and operate a ferry at the intersection of the Warrior river and the public road between Tuscaloosa and Eutaw, the fact being shown beyond controversy that he had no license and had given no bond, such representations were false, unless a ferry franchise may be acquired by prescription, and it be a fact that he had a prescriptive right in the premises.   Upon the issue made by special plea as to the existence of a right in him by prescription the evidence, to say the least for plaintiff, was conflicting; so that the giving of the affirmative charge for the defendant cannot be referable to and justified upon that issue. Recurring to the issue made by a denial of the allegations of the complaint—the general issue—and looking to the evidence shown by the bill of exceptions, which purports to set out all the evidence, we find that there was evidence before the jury tending to establish that the defendant made the representations as laid in one or more of the counts of the complaint, that plaintiff relied upon them and paid $2,500 because of and induced by them, and that they were false. If the representations were as to a matter of fact, it is immaterial

whether the defendant knew them to be false or not. If they constituted the expressions of opinion merely on the part of the defendant they would not support the action unless they were knowingly false, were made with intent to deceive and were accepted and acted upon as true. If doubtful in any case whether the statements are as to facts as distinguished from expressions of opinion, the question should be for the jury; and when the statements are of opinions merely, it is of course for the jury to determine whether they are consciously false, intended to deceive, etc., etc. On no aspect of the case could the affirmative charge for defendant have properly been given.

Whether a franchise to maintain a ferry may be acquired by prescription need not be decided in this case. The question appears to have been decided both ways in our earlier reports. The writer is inclined to think that such franchise cannot be so acquired. If it may, however, the fact may come in under the general issue in this case. No special plea was necessary.

Reversed and remanded.