# Graham *v.* Caperton, *et al.*

### *Bill to Establish Ferry Franchise and for an Injunction.*

(Decided February 8, 1912.   57 South. 741.)

1. *Ferries; Public Franchise.*—A right to keep a public ferry for toll is a franchise which cannot be exercised without legislative authority, and hence, such right is not appurtenant to the land of the riparian owner.

2. *Contracts; Execution.*—A contract relating to ferry rights which contemplated that it should not take effect until signed by all the descendants of a certain person, and by another who owned the soil at the landing, did not become operative for any purpose if some of such persons did not sign the contract; and the fact that a number of such descendants were given free ferryage, under a mistaken notion that they were entitled to it, did not show a valid contract.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by George H. Caperton and others against W. K. Graham and others to establish a ferry franchise, and to enjoin respondent from refusing free ferryage to complainants. Decree for complainant and respondents appeals. Reversed and rendered.

W. H. NORWOOD, and TALLEY & FRICK, for appellant. The respondents sustain their pleas of prescription and the statute of limitation.—*Milton v. Heyden,* 32 Ala. 30. The plea of bona fide purchase for value was also sustained.—*Wynn v. Rosette,* 66 Ala. 517; *Craft v. Russell,* 67 Ala. 9; *Barton v. Barton,* 75 Ala. 400.

VIRGIL BOULDIN, for appellee. A ferry franchise is real estate. An incorporeal hereditatment which descends as real estate.—*Lewis v. Gaines,* 7 Ala. 85; 18 Cyc. 499, note 63. A continued enjoyment of a fran-

[Graham v. Caperton, et al.]

chise for twenty years raises a conclusive presumption of a grant.—*Milton v. Heyden,* 32 Ala. 30; 19 Cyc. 497. Equity will protect the owner of a ferry franchise.— *Harold v. Ellsworth,* 17 Ala. 576; 19 Cyc. 502. Possession of one tenant in common is prima facie presumed to be possession of all, and does not become adverse unless an actual ouster is shown.—*Ashford·v. Ashford,* 136 Ala. 631.

SAYRE, J.—Prior to 1850, George Caperton, who owned the north shore land, established a ferry across the Tennessee river where it intersects a public road. This ferry was operated by George W. Caperton, son of George, for a number of years prior to 1868, when George W. died. After the death of George W., his son Samuel operated the ferry until 1880, when, having acquired the shore land, he conveyed the same and his interest in the ferry to S. C. Norwood, under whom the defendants claim land and ferry by mesne conveyances. Prior to the purchase by Norwood, in, to wit, 1874, he along with several of the descendants of George Caperton, signed a paper writing the purpose of which was to set apart a small tract upon the north shore as appurtenant to the ferry. The language of the writing also purports an agreement that said ferry, should it not be abolished by law, should remain the joint property of the signers and be operated at their joint expense. Among other provisions, some of which need not be stated, was the following: "Margaret C. Hardie being the sole owner of the lands on the S. E. side of said river, at said ferry, and a subscriber hereto, shall also have the same privileges and subject to the same restrictions as other subscribers, heirs at law of George Caperton." This so-called agreement is set out in the bill of complaint as a basis for relief, and it is also averred

that complainants and other heirs of George Caperton, who are not made parties, had for more than 20 years before their right was denied by defendants asserted and enjoyed a right of free ferriage and had thereby acquired by prescription a perpetual public ferry franchise at the point in question. The chancellor decreed that a ferry franchise had been established by prescription under continuous user by George W. Caperton, a son of George Caperton, and those claiming under and through him, and that the defendants were the owners by purchase of said franchise, subject, however, to the right of the complainants to free ferriage under the conditions and provisions of the written agreement, and also by virtue of continuous acknowledgment of, and acquiescence in, such right since the establishment of the ferry and until the ouster complained of. Defendants were enjoined from refusing free ferriage to complainants.

So far as complainants' title to relief is based upon the agreement, though not so phrased in the bill or decree, the relief sought and that granted must have proceeded upon the theory that complainants were entitled to specific performance of a contract the effect of which was that, if any of the owners in common should operate the ferry, the rest should have free ferriage.

The right to keep a public ferry for toll is a franchise which cannot be exercised without legislative authority. —*Milton v. Haden,* 32 Ala. 30, 70 Am. Dec. 523; *Tuscaloosa County v. Foster,* 132 Ala. 392, 31 South. 587. "As a matter of right, and as incidental to the right of property, any one owning lands on both sides of a river could establish a public ferry; but, as it is a matter in which the public is deeply interested, the Legislature has by law taken this right from the citizen, and deposited the power with the court of roads and revenue."—

*Jones v. Johnson,* 2 Ala. 746. It is therefore not appurtenant to the land of the riparian owner. In the *Tuscaloosa County Case* it was said that whether such a franchise may be acquired by prescription is a question which appeared to have been decided both ways in our earlier reports. In *State v. Commissioners of Talladega,* 3 Port. 412, it was held that: "There is no prescription right to a ferry in this state; the ownership of the land on the banks of our navigable streams gives none." *Milton v. Haden, supra,* was the case of a suit on a promissory note given for the rent of a ferry. After observing that the authorities were not entirely in harmony on the question whether franchises might be held by prescription, the court held that where the question of the right to the franchise is presented collaterally only, from the uninterrupted use and occupation of the public ferry for 20 years the presumption may be drawn that it had a legal origin. In a later appeal in the same case (35 Ala. 230) the defendant appears to have pleaded that he had been ousted of the franchise by one Nance claiming under title paramount, i. e., a license from the court of county commissioners. The court said: "If the lessors, and those under whom they held, had enjoyed the uninterrupted use of the franchise for more than 20 years, and there was no countervailing proof to disturb the presumption of judicial license, or legislative grant, thereby created, it is obvious that the court of county commissioners had no power to grant a license for a ferry at the same point to Nance." In the latest case touching the subject (*Tuscaloosa County v. Foster, supra*) McClellan, C. J., expressed his inclination to the opinion that such a franchise could not be so acquired. The parties, though differing as to complainants' alleged right of free ferriage, follow the lead of their respective interests in agreeing, and so

the chancellor held, that a franchise had been establish-ed by prescription, and, as we understand the decree, an alienable interest or estate in land thus created. And upon this foundation, this establishment of the exist-ence of the subject-matter of that contract as a prop-erty right in real estate, seems to have been builded the proposition that the contract of 1874, entered into by the predecessors in interest of the respective parties, is binding upon these defendants. If it should for a moment be conceded, agreeably with the interest and opinion of all parties—the interest of the defendants in this particular being outside of this suit, of course—but contrary to what seems to have been the better opinion of our predecessors, that a franchise to main-tain and operate Caperton's ferry has been established by prescription and thereby an incorporeal heredita-ment acquired by complainants' ancestors, in judgment of law real property, descendible and alienable as such, though subject to revocation if bonds be not made and kept good as required by statute law (*Lewis v. Gaines-ville,* 7 Ala. 85), still on the facts shown complainants are not entitled to relief. As a conveyance for the alien-ation of land or the creation of an interest in land, the paper writing of 1874 is void for lack of those formali-ties of execution which are required by statute. If it should be further conceded that such a paper as that to which the predecessor of defendants and some of the descendants of George Caperton put their signatures in 1874 might witness a personal obligation which is en-forceable by the latter against the vendees of the for-mer by an injunction against the exercise of the fran-chise unless upon the terms secured by the contract, a species of specific performance, complainants are still not entitled to relief for a reason more comprehensive and as effective as that already stated.

It appears by what seems to us the weight of the evidence that the so-called contract was never intended to take effect until and unless signed by all the heirs— by which the negotiating parties seem to have meant descendants—of George Caperton and by Margaret C. Hardie who owns the soil at the south landing. This appears in the instrument itself. It is also shown by evidence aliunde. The chancellor found, and properly so, that George Caperton had acquired no franchise. But the parties were dealing with the ferry and the parcel of land adjacent to the north landing as having been the property of George Caperton. They dealt with the ferry as appurtenant to the shore land. A majority of the descendants of George Caperton, as well as Margaret C. Hardie, failed or refused to sign the paper, and the testimony goes to show that this they did because some of them, at least, came to understand that the land, to which they conceived the ferry to be appurtenant, had passed into the sole ownership of Samuel Caperton, who also failed or refused to sign. We conclude that the paper writing was not effectual for any purpose whatever. Nor is there evidence that, apart from the instrument declared upon and offered in evidence, there was ever any agreement to a like effect among the heirs or descendants of George Caperton. That the complainants and others composing a minority of the descendants of George Caperton have been accorded free ferriage upon a mistaken notion that they were entitled to it by reason of their descent, which is as far as the proof goes, falls short of proving an agreement, on valuable consideration, vesting such a right in them. But the relief decreed was such as could have been based upon an agreement only.

Being of opinion that complainants are not entitled to the relief awarded nor any other, the decree will be

reversed, and a decree here rendered dismissing the bill at the cost of complainants.

Reversed and rendered.   All the Justices concur.