### Richmond.

METROPOLITAN LIFE INSURANCE CO. V. RUTHERFORD.

APRIL 7, 1898.

Absent, Cardwell, J.

1. PLEADING—*Declaration in Debt on Insurance Policy—What Must be Averred—Common Counts.*—Where an act is to be done by one party as a condition precedent to his right to claim performance of another, he cannot claim such performance without averring the doing of such act, or giving some excuse for its non-performance. Hence, in an action of an insurance policy, where the money is only payable on the performance of certain acts and the existence of certain facts, the declaration must aver the performance of those acts, and the existence of those facts. There can be no recovery upon such policy upon a declaration which contains only the common counts. If the common counts were sufficient, then the act for simplifying declarations on insurance policies (Acts 1871-2, p. 578) was wholly unnecessary.

2. APPEAL AND ERROR—*Demurrer Sustained to One Count by Trial Court—Issue and Trial on Other Counts—Ruling on Demurrer Cannot be Considered on Appeal by Defendant.*—Where a demurrer to one count of a declaration has been sustained, and issue taken on other counts, and there have been a verdict and judgment for the plaintiff, a writ of error awarded to the defendant does not bring up the action of the trial court in sustaining the demurrer to that count, nor can that count be looked to by the appellate court in order to sustain the verdict and judgment complained of.

3. INSURANCE—*Answers in Application as to Diseases—Case at Bar.*—In an application for life insurance which is made a part of the policy, and its statements deemed warranties, the applicant stated that he had never had any disease of the urinary organs and was then in sound health, but also stated that he had had disease of the kidneys, and jaundice.

*Held:* If prior to the time these statements were made the applicant had had any disease of the urinary organs other than disease of the kidneys, the defendant company was released from liability,

although that disease was caused by disease of the kidneys. And if the applicant was not in sound health when insured, except so far as his health was impaired by the diseases which he stated in his application he had had, the company was also released. The object of the question as to disease of the urinary organs was to ascertain whether the applicant had had any disease of the urinary organs, no matter how caused, by which their ordinary operation had been seriously disturbed, or their vital powers materially weakened, and it was proper for the jury to consider the object of the question and the circumstances under which the answer was made.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered December 11, 1896, in an action of debt wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The evidence sufficiently appears in the opinion of the court. The declaration was as follows:

"Mary Rutherford complains of the Metropolitan Life Insurance Company of New York, a corporation chartered under the laws of the State of New York, and doing business in the State of Virginia, of a plea that it render unto the said plaintiff the sum of $500, which to her the said defendant owes, and from her unjustly detains; for this, to-wit: that heretofore, to-wit: on the 31st day of July, in the year of our Lord eighteen hundred and eighty-three, the said defendant issued a certain policy of insurance, to-wit: No. 8,852,539 (which is now in the possession of the said defendant, and which it refuses to deliver to the plaintiff) upon the life of the plaintiff's husband, Edward Rutherford, by which policy the defendant company agreed, among other things, that in consideration of the sum of sixty-three cents, to be paid each week, the said company would and did therein agree to insure and did insure the life of the said Edward Rutherford, to-wit: in the sum of $500, to be paid to the plaintiff upon the expiration, to-wit: of ten days after proper proof and

notice of the death of the said Edward Rutherford should be furnished the said company. And the said plaintiff says that she and her said husband complied with the terms of said policy, and have performed all the conditions therein contained, and violated none of its prohibitions. And the said plaintiff says that the premiums were paid according to the said agreement, and that she gave the defendant due and proper notice and proof of her said husband's death, who died, to-wit: on the 4th day of December, 1895, more than ten days before the institution of this suit, all of which was in proper form and in accordance with said contract of insurance. And the said plaintiff says that the said defendant company became and was then indebted to the said plaintiff after the expiration of ten days from the time notice and proof of death were given the said defendant as aforesaid of the death of the said Edward Rutherford, and agreed to pay the said sum of $500 in consideration of the payment of said premiums paid to said company whenever the said defendant should be thereunto afterwards requested, whereby and by reason of the said sum of money being and remaining wholly unpaid, an action hath accrued to the said plaintiff, to have of and from the said defendant the said sum of $500 above demanded. Yet the said defendant, although often requested, hath not as yet paid to the said plaintiff the said sum of $500 above demanded, or any part thereof, but the same to pay hath hitherto wholly refused, and still doth refuse to the damage of the said plaintiff $500.

"And for this also, to-wit: that heretofore to-wit: On the 28th day of May, 1894, the said defendant issued a certain other policy of insurance No. 10,066,903 (which policy is now in the possession of the defendant company, and the said company refuses to deliver the same to the plaintiff) upon the life of the plaintiff's husband, Edward Rutherford, by which policy the defendant company agreed, among other things, that, in consideration of the sum of sixty-six cents, to be paid each week, the said company would and did therein agree to insure and did in-

sure the life of the said Edward Rutherford, to-wit: in the sum of $500, to be paid to the plaintiff upon the expiration, to-wit: of ten days after proper proof and notice of the death of the said Edward Rutherford should be furnished the said company, and the said plaintiff says that she and her said husband complied with the terms of said policy and have performed all the conditions therein contained and violated none of its prohibitions. And the plaintiff says that the said premiums were paid according to the said agreement, and she gave the defendant due and proper notice and proof of the death of her said husband, who died, to-wit: on the 4th day of December, 1895, more than ten days prior to the institution of this suit, all of which was in proper form and in accordance with said contract of insurance. And the said plaintiff says that the said defendant company became and was then indebted to the said plaintiff after the expiration of ten days from the said notice and proof of the death of the said Edward Rutherford, and agreed to pay the said sum of $500 in consideration of the payment of said weekly premiums paid to the said company whenever the said defendant should be thereunto afterwards requested, whereby and by reason of the said sum of money being and remaining wholly unpaid, an action hath accrued to the said plaintiff to have of and from the said defendant the sum of $500 above demanded.

"Yet the said defendant, though often requested, hath not as yet paid to the said plaintiff the said sum of $500 above demanded, or any part thereof, but the same to pay hath hitherto refused, and still doth refuse, to the damage of the said plaintiff $500.

"And for this also, to-wit: that heretofore, to-wit: on the 19th day of December, 1895, the said defendant was indebted to the said plaintiff in the sum of $1,012.94 for money before that time lent and advanced to, and paid, laid out and expended for the said defendant, and at its special instance and request, and also in the further sum of $1,012.94, for other money by the said defendant before that time had and received to and

for the use of the said plaintiff; and being so indebted, the said defendant, in consideration thereof, afterwards, to-wit: On the 22d day of December, 1895, undertook, agreed and faithfully promised the said plaintiff to pay her the said several sums of money in this count mentioned, when the said defendant should be thereunto afterwards requested. Nevertheless, the said defendant, not regarding its said several promises and undertakings, hath not as yet paid to the said plaintiff the said several sums of money, or any or either of them, or any part thereof, although often requested so to do; but to pay the same hath hitherto wholly neglected and refused, and still doth neglect and refuse, to the damage of the said plaintiff of $1,012.94.

"And for this also, that the said defendant afterwards, to-wit: on the 23d day of December, 1895, accounted with the said plaintiff of and concerning divers other sums of money, before that time and then due and owing and in arrear and unpaid, from the said defendant to the said plaintiff, and upon that accounting, the said defendant was then found to be in arrear, and indebted to the said plaintiff in the further sum of $1,-012.94, to be paid by the said defendant to the said plaintiff, when the said defendant should be thereunto afterwards requested; whereby, and by reason of the said last mentioned sum of money being and remaining wholly unpaid, an action hath accrued to the said plaintiff, to demand and have of and from the said defendant the last mentioned sum of $1,012, the residue of the said sum of $1,012.94 first above demanded.

"Yet the said defendant, although often requested, hath not as yet paid to the said plaintiff the said sum of $1,012 above demanded, or any part thereof, but the same to pay hath hitherto wholly refused, and still doth refuse, to the damage of the said plaintiff of $1,012.94; and therefore she brings her suit."

*Leake & Carter* and *B. Rand. Wellford,* for the plaintiff in error.

*P. A. L. Smith* and *R. W. Ivey,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Mrs. Mary Rutherford instituted an action of debt against the Metropolitan Life Insurance Company to recover the sum of $1,012.94. The declaration contained two special counts, the common counts for money lent, money paid, and money had and received, and upon an account stated.

The defendant company demurred to the declaration and to each count thereof, and pleaded *nil debet*. The demurrer was sustained as to the special counts, and overruled as to the common counts. Upon the trial of the cause upon the issues joined upon the common counts, the plaintiff offered to read to the jury two policies of insurance issued by the defendant upon the life of Edward Rutherford, each for $500. To this evidence the defendant objected upon the ground that these policies which contained conditions and provisos, were not admissible in evidence upon the common counts, but that in order to introduce them, it was necessary to declare upon them specially and set out in the declaration fully the terms of each contract, and the performance of its conditions on the part of the plaintiff and those she claimed under.

This assignment of error raises the question whether a recovery can be had upon a policy or contract of insurance where, by the terms of the policy, the money is only payable on the performance of certain acts by the insured and the existence of certain facts without alleging in the declaration the performance of those acts, and the existence of those facts, or averring some sufficient excuse for their non-performance and non-existence.

Counsel for plaintiff have cited us to no authority, nor have we, in our research, been able to find any case in which it has been held that a recovery can be had upon such a policy of insurance upon a declaration containing only the common counts.

The general rule is that where an act is to be done by one party as a condition precedent to his right to claim performance upon the part of the other, he cannot claim such performance

without averring the doing of such act or giving some excuse for its non-performance.

Mr. Chitty says, that "when the consideration of the defendant's contract was executory, or his performance was to depend upon some act to be done or forborne by the plaintiff, or in some other event, the plaintiff must aver the fulfilment of such condition precedent, whether it were in the affirmative or negative, or to be performed or observed by him or by the defendant, or by any other person, or must show some excuse for the non-performance." 1 Chitty on Pleading, 329.

Mr. Robinson says, in discussing this question, that "all the cases agree that where words make such condition" (that is, a condition precedent) "the declaration must aver performance thereof." 4 Rob. Pr. p. 3, 492, &c.; 3 Do. 571, 581; 1 Barton's Law. Pr. 317.

The rule as stated in the text books is fully sustained, we think, by the cases. *Baltimore & Ohio R. Co.* v. *McCullough,* 12 Gratt. 595, 597, and cases cited; *Roach* v. *Dickenson,* 9 Gratt. 154; *Brockenbrough* v. *Ward,* 4 Rand. 352, 354-5.

If money due upon such policies of insurance could be recovered upon the common counts, the Act of Assembly of February 9, 1872, entitled an act to simplify declarations in actions; against insurance companies (Acts 1871-2, p. 578), and now found in substance in the Code as section 3251, was wholly unnecessary.

That section of the Code provides "that in an action on a policy of insurance, if the plaintiff file the policy or a sworn copy thereof with his declaration, it shall not be necessary, in respect to the conditions and provisos of such policy to set forth in the declaration every such condition and proviso, nor to allege observance thereof or compliance therewith in particulars; but in respect to such conditions and provisos it shall be sufficient to refer to the policy or copy and allege, in general terms, the performance of all its conditions, and the violation of none of its prohibitions."

The first two counts in the declaration were evidently framed with reference to the provisions of that statute, and the common counts were added doubtless to enable the plaintiff to recover the small sum sued for, in addition to the amount of the two policies, which the evidence shows or tends to show had been overpaid upon the premiums on the policies.

The common counts are some times added to the special counts for the purpose of recovering money which cannot be recovered upon the special counts based upon the policy itself, as for over payment of premiums and the like.    2 Saunders on Pl. & Ev., Pt. 1, p. 231; 2 Chitty on Contracts (11th Amer. Ed.), 925.

The court, we think, erred in admitting the policies of insurance in evidence.

When a demurrer is sustained to a count in a declaration, issue taken upon the remaining counts, a trial had and a verdict and judgment rendered in favor of the plaintiff, a writ of error awarded to the defendant does not bring up the action of the trial court in sustaining the demurrer to that count, nor can that count be looked to in this court in order to sustain the verdict and judgment complained of, as counsel for defendant in error insist.

The second assignment of error seems to have been abandoned; at least, it was not pressed in oral argument, and properly so, for it is without merit.

The third error assigned is to the action of the court in refusing to give instructions numbered four, five, and six asked for by the defendant, and in giving in their place instructions marked, A, B, and C.

In the first application of the deceased, which was made a part of the policy, the following question was asked the deceased: "Has the life ever had any of the following complaints?  Answer (yes or no) opposite each."    Then follows a list of diseases about which the deceased was asked, viz.: apoplexy, asthma, bronchitis, cancer or other tumor, consumption, disease of the

brain, disease of the heart, disease of the kidneys, disease of liver, disease of the urinary organs, dropsy, fistula, fits, or convulsions, general debility, habitual cough, hemorrhage, insanity, jaundice, paralysis, pleurisy, pneumonia, rheumatism, scrofula, spinal disease, spitting or raising blood, ulcer or open sores, and varicose veins. As to the disease of kidneys and jaundice the deceased answered: "Yes;" as to all others "No."

In the application for the other policy, which was also made a part of it, he was asked the same question and gave the same answers, except as to the disease of the liver, which was answered "Yes." In each application he answered "yes" when asked if he was "now in sound health." He was also asked in both applications when he was last sick, and of what disease. In the former he answered in 1893 with colic, and in the latter January, 1894, with chills.

In the instructions asked for by the defendant the jury were informed, among other things, that if the deceased had had disease of the urinary organs or was not in sound health when insured the defendant was released, and that they must find in its favor. In the substituted instructions the court, upon this question, limited the grounds upon which the defendant would be released to the lack of prior health, or to diseases not caused by disease of the kidneys. The rejected instructions were clearly erroneous, and this does not seem to be controverted seriously, if at all, by the defendant's counsel, but it is claimed that the court erred in the substituted instructions in limiting the defendant's rights to be released to bad health, or to diseases not caused by disease of the kidneys.

If prior to the time when those answers were made, the deceased had had any disease of the urinary organs other than disease of the kidneys, or if he was not in sound health at the time the answers were made, the defendant was released from liability, for each of the answers made was warranted as true by the terms of the policies. What the defendant sought by its question was to learn whether or not he (deceased) had had any disease of his

urinary organs, no matter how caused, by which their ordinary operations had been seriously disturbed, or their vital powers materially weakened. In ascertaining whether his urinary organs had been diseased or not it was proper for the jury to consider the object which the defendant had in making the enquiry and the circumstances under which the answer was made. As was said by the Supreme Court of the United States in the case of *Connecticut Mut. Life Ins. Co.* v. *Union Trust Co.*, 112 U. S. 250: "It was not contemplated that the insured could recall, with such distinctness as to be able to answer, categorically, every instance during his past life, or even during his manhood, of accidental disorder or ailment affecting the liver which lasted only for a brief period and was unattended by substantial injury, or inconvenience or prolonged suffering. Unless he had an affection of the liver that amounted to disease, that is, of a character so well defined and marked as to materially derange for a time the functions of that organ, the answer that he had never had the disease called affection of the liver was a 'fair and true' one; for such an answer involved neither fraud, misrepresentation, evasion, nor concealment, and withheld no information as to his physical condition with which the company ought to have been made acquainted."

If the deceased had, in fact, had disease of the urinary organs, other than disease of the kidneys, the defendant was released from liability, although that disease was caused by disease of the kidneys, and the court erred in not so instructing the jury.

And if the deceased was not in sound health when insured, except in so far as his health had been impaired by the diseases which he stated in his application that he had had, the defendant was released upon that ground also.

As the judgment will have to be reversed for the errors referred to above, it is unnecessary to consider the other assignment of error, viz., that the verdict is contrary to the evidence.

The judgment must be reversed, the verdict set aside, and

the cause remanded for a new trial with leave to the plaintiff to file an amended declaration; the new trial to be had in accordance with the views expressed in this opinion, so far as they are applicable to the case made.

*Reversed.*