𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

NATIONAL LIFE ASSOCIATION OF HARTFORD v. HOPKINS'S ADM'R
AND OTHERS.

JUNE 15, 1899.

1. CHANCERY JURISDICTION—*Adequate Remedy at Law.*—Courts of equity
   have concurrent jurisdiction with courts of law where the remedy
   at law is less adequate and complete than in equity.
2. LIFE  INSURANCE — *Application — Former   Rejection — Concealment—
   Warranty.*—On an application to a second company for insurance
   as a "rejected risk" based upon and averring the truth of the
   statements in the application to the first company, failure to dis-
   close the fact that since rejection by the first company the appli-
   cant had been twice examined and rejected as unsound by the
   medical examiners of the second company is a breach of the war-
   ranty contained in the application that no proposal or application
   to insure the life of the applicant had ever been made to any com-
   pany or agent upon which assured had been rejected, or upon which
   a policy had not been issued and received by him.
3. FRAUD—*Allegation and Proof.*—An averment in an answer that a
   policy of insurance was procured by the suppression of material
   facts, and that the assured and another conspired to thus obtain
   the policy, is a sufficient charge of fraud to admit evidence to
   prove the facts.

Appeal from a decree of the Law and Equity Court of the city
of Richmond pronounced April 29, 1899, in a suit in chancery,
wherein the appellee was the complainant, and the appellant
and others were the defendants.

*Reversed.*

The opinion states the case.

*Edmund Pendleton,* for the appellant.

*A. R. Courtney, L. L. Lewis,* and *George P. Haw,* for the appellees.

KEITH, P., delivered the opinion of the court.

Hopkins's administrator filed a bill in chancery in the Law and Equity Court of the city of Richmond in which he avers that the estate of his intestate consists of an interest in four policies of insurance issued in July, 1895, by the National Life Association of Hartford, Conn., each for the sum of $2,000, and payable at his death; that of the said policies of insurance one is in the possession of Thomas Anderson, one in the possession of Robert H. Roundtree, and two in that of Peter Paul, who claim absolutely the proceeds of the policies by virtue of certain alleged assignments to them by Hopkins, except that Roundtree claims under one Lassiter to whom an assignment was made by Hopkins. The bill charges that no consideration passed for any of the assignments other than the premiums advanced on the policies, which did not exceed for any one policy the sum of $75, and, save to that extent, none of the assignees had any insurable interest in the life of Hopkins. The bill then states that Anderson, Roundtree, and Paul have each instituted an action at law in the Circuit Court of the city of Richmond against the Hartford Company, and that it is necessary for the protection of the estate of his decedent that the plaintiffs in said actions should be enjoined from collecting the policies. It is further averred that Hopkins died owing small debts, the extent of which is unknown to the administrator.

The prayer of the bill is that Anderson, Lassiter, Roundtree, Paul, and the National Life Association of Hartford, Conn., may be made parties defendant and required to answer; that the assignees be enjoined from further prosecuting the said actions at law, and from collecting said policies; that they be

required to file forthwith with the papers in this cause the policies held by them; that inquiry be made to ascertain what legal interest, if any, they, or either of them, have in the policies; that the assignments be cancelled so far as they may be ascertained not to be founded on a consideration valid under the laws of Virginia, and plaintiff's rights be ascertained and protected; that the Life Association be required to pay the amount of the policies, with interest, into court; that all proper accounts be ordered and taken to ascertain the indebtedness of the intestate; that the creditors of his estate be convened, and plaintiff's estate be fully administered under the direction and supervision of this court.

An injunction was awarded, and upon a hearing on the demurrer and answer of the National Life Association of Hartford and exhibits filed therewith, and the demurrer of Peter Paul and Robert Roundtree the court entered a decree directing the accounts prayed for in the bill. Proofs being taken, and the cause coming on to be heard upon the merits, a decree was rendered against the National Life Association directing it to pay into the Planters Bank of the city of Richmond $4,808, with interest from September 24, 1896, and reserving all other questions in the cause for future consideration. From that decree the National Life Association appealed.

In its answer to the bill the association avers, among other things, that Hopkins, on the 17th of June, 1895, applied through Albert Miller, general agent for the Northwestern Masonic Aid Association of Chicago, Ill., for insurance in that association, but that for some reason not apparent on the face of the application nor known to the respondent, the Northwestern Insurance Company rejected the application, and returned it to its agent, Miller; that Miller, who was in nowise an agent for or connected with the defendant company, but who acted for and on behalf of Hopkins and others, " entered into a conspiracy with the said Hopkins and others to secure the desired

insurance from your respondent, suppressing the fact that Hopkins had been rejected by the Northwestern Association; that, failing in this, Miller and Hopkins applied to this respondent for insurance on the life of Hopkins as a ' rejected risk,' filling up for that purpose a supplemental application to respondent signed by Hopkins, dated July 8, 1895, and attaching it to the rejected application to the Northwestern Association, and re-affirming the statements, representations, declarations, answers, and warranties therein made, both of which are herewith filed, as exhibits 'A' and ' B '; that your respondent knowing nothing but what appeared on the face of the papers, and, accepting as true the statements, answers, declarations, representations, and warranties contained therein, did on the faith thereof issue to Hopkins the policies aforesaid."

The answer further avers that Hopkins, immediately upon receipt of the policies, pursuant to a preconcerted arrangement between them, assigned one of the policies to Anderson, two of them to Paul, and the fourth to Joseph Lassiter. The answer further avers " that Hopkins was never indebted, to any appreciable extent, to Anderson, Paul, or Lassiter, either before or since the assignments; that these three entered into a conspiracy with Miller and Hopkins for the purpose of speculating on the life of Hopkins who they knew to be a confirmed drunkard, with no constitution left, of the most dissipated and turbulent habits, already in failing health, and altogether a most promising subject for speculative insurance. Miller was to get his commissions, and Hopkins, who was a poor, shiftless drunkard, without any regular employment, but a hanger-on and doer of odd jobs about Anderson's blacksmith-shop, would be satisfied if he were kept supplied with whiskey, and given a dollar or two now and then. In furtherance of this joint scheme, the said application or applications were most carefully prepared, with a view to getting the policies issued, and your respondent was so unfortunate as to fall into the trap, but, fortunately, its investigation

since the death of Hopkins has disclosed the wager or specula-
lative character of the insurance, the fraudulent methods by
which it was secured, and the absolutely false and untrue state-
ments, representations, declarations, and answers contained in
said application, and the fraudulent suppression of material
facts," each and all of which it is alleged and charged operated
as a distinct breach of warranty.

There was a demurrer to this bill which the court overruled,
and in this we are of opinion there is no error.

The suit was brought by an administrator for the settlement
of his decedent's estate, the assets consisting of four policies of
insurance taken out upon the life of his intestate, and by him
assigned to three persons, all of whom were proceeding by suit
to collect the whole of the policies assigned to them. It is averred
that they had no interest beyond the payment of certain pre-
miums in the proceeds of the policies. It may be that the admin-
istrator of Hopkins had a remedy at law, but it seems plain that
the remedy at law is far less adequate and complete than in
equity, where the rights of all concerned can be ascertained
and determined in a single suit. Under such circumstances it is
well settled that a court of equity has concurrent jurisdiction
with courts of law. Story's Equity, sec. 33; *Stuart* v. *Pennis,*
91 Va. 688; *Boyce* v. *Grundy,* 3 Peters, 215; *Wylie* v. *Coxe,*
15 How. 415; *Sullivan* v. *Portland R. Co.,* 94 U. S. 806.

One of the contentions of the appellant, and the only one
which we deem it necessary to consider, is that Hopkins applied
to it for insurance as a "rejected risk" and filed with it his
application for membership in the Northwestern Aid Associa-
tion of Chicago, dated the 17th of June, 1895. In his appli-
cation to that company he makes certain statements, represen-
tations, and answers, and in what is known as the auxiliary
application to the National Life Association for a "rejected
risk" he states that "I hereby apply for a policy of $8,000 in
the National Life Association of Hartford, Conn., and as a con-

sideration therefor I hereby present the statements, declarations, and answers contained in a copy of an application and examination heretofore made to the Northwestern Masonic Aid Insurance Company, of Chicago, Ill., and dated June 17, 1895, which are attached hereto, and, together with this application, made the basis of the said contract of insurance, hereby applied for, warranting the said statements, answers, and representations in all the papers referred to, and which, taken together, are to be made the basis of the contract, to be full, complete, and true."

Among the warranties which he made is the following: " I hereby further warrant and agree that all material facts regarding my past health and present physical condition have been fully stated as directed; that I am now in sound health, and free from any disease, habit, or vice, or any condition of person or occupation tending to impair my health or injure my constitution, except such as are fully stated in the copy of the application and examination above referred to and hereto attached; that I have carefully noted each and every answer to the above questions and statements made in this application, and annexed papers, which have been written at my request as directed."

Among the questions answered in the application to the Masonic Aid Association is the following: " In what other companies have you formerly been insured? " Answer: " None."

" Has any proposal or application to insure your life ever been made to any company or agent, upon which you have been rejected, or upon which a policy has not been issued and received by you? " Answer: " No."

It appears that after the rejection of his application by the Masonic Aid Association and before his application to the National Life Association to be insured as a " rejected risk," Hopkins went with Miller to Dr. George Ross to be examined for insurance in the National Life Association. They presented forms of application for insurance in that company. Dr. Ross

found him an unsound risk after a careful and complete examination. They then went to Dr. Blankenship, and he was again examined, with the same result. These gentlemen, who were the regular examiners, refused to give him a certificate upon which policies would be issued. Miller, in his deposition, made answer to question 15 propounded by counsel for the insurance company as follows: "I took Mr. Hopkins's application for $8,000 insurance. The Northwestern Masonic Aid Association declined to write the policy. I then took a copy of the application and examination made to the Northwestern Masonic Aid Association, submitted it to the doctor who examined him in the Northwestern Masonic Aid Association, which he certified to, and presented it to the National Life Association of Hartford, and they issued four policies of two thousand dollars each. Prior to the submitting of this application to the National Life Association of Hartford, I had Mr. Hopkins examined by Drs. Ross and Blankenship, who were the regular examiners at that time of the National Life Association. Neither of these examinations, in my opinion, the company would have issued the policy on, and I therefore presented them, the National Life Association, with a certified copy of the examination made for the Northwestern Masonic Aid Association in lieu thereof."

In answer to question 16, "Did you ever submit these examinations, either of Dr. Ross or Dr. Blankenship, to the company or any agent thereof?" Answer: "I did not."

It thus appears that Miller, the soliciting agent through whom the policies in suit were obtained, fraudulently colluded with Hopkins to suppress the material fact, that Hopkins, with a view to applying for insurance in the National Life Association, had been examined by two reputable physicians in the employment of the association, and had been by them rejected as an "unsound risk." This seems to us a breach of the warranty made by Hopkins when asked, "Has any proposal or application to insure your life ever been made to any company or agent upon

which you have been rejected or upon which a policy has not been issued and received by you?" and to which question he replied, "No," although he knew at the time that he had been examined by Drs. Ross and Blankenship, and had been rejected by both of them. Counsel for the appellee speak of this as an informal proposal. It was a proposal upon which the policy asked for would have been issued had the result of the examination made by the examining physicians been favorable to the applicant.

It is contended also by the appellee that the pleadings did not warrant the introduction of this evidence; that fraud must be pleaded and proved. The answer of the defendant company states that "Miller, acting on behalf of Hopkins and others, entered into a conspiracy with them to secure the desired insurance from respondent, suppressing the fact that Hopkins had been rejected by the Northwestern Association as aforesaid, and that, failing in this, the said Miller and Hopkins applied to this respondent for insurance as a "rejected risk." That language can have but one meaning, which is that their first effort was to secure an ordinary policy, paying the usual premium, from the defendant company, making no reference to the abortive effort to procure insurance in the Northwestern Company; that in execution of this purpose Miller took Hopkins to Drs. Ross and Blankenship to be examined, but they refusing to approve him for insurance, the fact that he had been thus examined was suppressed, and application was made to the National Life upon the footing of a "rejected risk," which requires a much higher premium, in which full disclosure was made of the dealing with the Northwestern Masonic Aid Association. That statement of the answer, taken in connection with the charge of suppression of material facts, was sufficient to warrant the introduction of the evidence before recited, which was admitted without objection. That Hopkins had been examined by two examiners of the appellant and rejected was a

Opinion.

most material fact. It is wholly improbable that the policies would have been issued had that fact been known; but, however that may be, it was a material fact fraudulently suppressed as well as a breach of warranty, and bars any recovery upon the policies.

We are of opinion that the decree of the court of Law and Equity should be reversed, and this court will enter such order as should have been entered dismissing the plaintiff's bill, with costs to the appellant.

*Reversed.*