186 So. 453

**SOVEREIGN CAMP, W. O. W., v. YOUNG.**

**6 Div. 436.**

Supreme Court of Alabama.

Jan. 19, 1939.

Rehearing Denied Feb. 16, 1939.

Ernest Fite, of Hamilton and Arthur Fite, of Jasper, for appellant.

William Stell, of Russellville, and C. E. Mitchell and Fred Jones, both of Hamilton, for appellee.

GARDNER, Justice.

Plaintiff is the named beneficiary in a benefit certificate of insurance on the life of Lee B. Young, her debtor and brother-in-law.

Among the defenses interposed was the falsity of the statement of the insured in his application for insurance, that he had never been rejected for life insurance by

any society, association or company, and that he had never failed to receive a contract for life insurance for the full amount and kind applied for.

The certificate sued upon was duly issued in November 1935. Insured died February 24, 1936 of arteriosclerosis, a disease which the attending physician states has "hereditary tendency as many close relatives have gone that way." The certificate here sued upon contains recitals, in conformity with section 8452, Code of 1923 (defendant is a fraternal organization), that the constitution, laws and by-laws of the order and all amendments thereto, as well as the application for membership, the statement of the applicant to the medical examiner and the certificate itself should constitute the agreement between the parties, and pertinent provisions of the constitution and laws of defendant order were offered in evidence. They are in large part reproduced in Sovereign Camp, W. O. W. v. Thompson, 234 Ala. 216, 174 So. 761, and no necessity appears for their reproduction here.

■ Suffice it to say, upon the question hereinafter to be considered, it appears without dispute that insured had, in his application, answered in the negative the questions as to the matter of rejection for life insurance, as above indicated, and that this answer was false. He had, undisputedly, only some few months before (April, 1935) applied for life insurance in the American National Insurance Company of Galveston, Texas, and had been rejected. This was a complete defense as disclosed by the following from 4 Cooley's Briefs on Insurance, 2d ed., page 3228: "Among the questions invariably asked of the applicant for life insurance is whether he had ever applied to any other company for insurance and been rejected. The purpose of the question is perhaps two-fold—to discover whether the risk has ever been regarded as unsafe by other insurers, and to show the applicant's anxiety for insurance. Whether the applicant has ever applied to other companies for insurance and been rejected is, therefore, regarded as material to the risk, and a statement in this regard whether made as a warranty or as a representation, will, if false, avoid the policy."

The authorities fully support the text. Among those which we have examined are the following: Ætna Life Ins. Co. v. Moore, 231 U.S. 543, 34 S.Ct. 186, 58 L.

Ed. 356; Greber v. Equitable Life Assur. Society, 43 Ariz. 1, 28 P.2d 817; Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 528, 194 S.W. 581, L.R.A.1917E, 554; Mutual Life Ins. Co. v. Denton, 93 Fla. 276, 112 So. 53; Steele v. Sov. Camp, W. O. W., 115 Kan. 159, 222 P. 76; Hardy v. Phoenix Mutual Life Ins. Co., 167 N.C. 22, 83 S.E. 5; Ferris v. Home Life Assur. Co., 118 Mich. 485, 76 N.W. 1041; Goodbar v. Western & Southern Life Ins. Co., 89 W.Va. 221, 108 S.E. 896; Ebner v. Ohio State Life Ins. Co., 69 Ind.App. 32, 121 N.E. 315; Applebaum v. Empire State Life Assur. Society, 311 Pa. 221, 166 A. 768; Masonic Life Assur. v. Robinson, 149 Ky. 80, 147 S.W. 882, 41 L.R.A.,N.S., 505. Of these authorities, perhaps that of greatest interest here is Mutual Life Ins. Co. v. Dibrell, supra, wherein the Tennessee court notes the fact that their statute is identical with the statute of Alabama and other states therein named.

The opinion had reference to what is now section 8364, Code of 1923, but the language of section 8507, Code of 1923, which relates to fraternal organizations, is the same, that is, the words here important, "or unless the matter misrepresented increase the risk of loss," are identical with those of section 8364. The observations, therefore, of the Tennessee court are of peculiar interest and we feel justified in taking the following extracts from that opinion [page 582]:

"The materiality of such questions and answers is made plain by any one of several considerations:

"(a) If there were a disclosure that there had been an examination, followed by nonissue of policy, the company would thereby be put on guard and would make its own inquiries and physical examination more thorough; or it might see fit to decline outright a risk that another company had refused to take.

"(b) If the answer were false, the company was, in all reasonable contemplation deprived of the opportunity sought by it for a discovery as to whether or not the risk had been regarded as unsafe by other insurers. The judgment of the medical staffs of other companies might be deemed of value to the company applied to, but the avenue of approach thereto was at least measurably closed by the false answer.

"(c) A further purpose of the clause was to elicit the applicant's anxiety for insurance, if any.

"We think it manifest that all of these considerations have a fair relation to the 'risk of loss' assumed by the insuring company in the issuance of the policy. As sources of information are revealed, and investigation is pursued, the degree of risk of loss decreases.

"It cannot be that the matter misrepresented should necessarily relate to the hazard of loss by the death of the insured. Such a construction might prevent the company's rescinding the contract because of a misrepresentation that actually induced the contract, in an action begun promptly after the making of the application and the issuance of the policy. What will not avail to 'void the policy,' under the statute, it seems equally will not 'prevent its attaching,' as a contract. We cannot adopt the harsh and radical construction that the Legislature meant to deprive the insurer of the right to rescind the policy contract for inducing fraud.

"The phrase 'increases the risk of loss' is, in our view, the same as that appearing in numerous other statutes, 'increases the risk,' and both alike include the risk of loss involved in the issuance of the policy."

A full and clear discussion of the question from every angle is found in the Dibrell Case, supra, but we consider further quotation therefrom unnecessary. It is in harmony with practically all the authorities, both state and federal so far as our investigation has gone, and is likewise in accord with expressions of our own Court on related questions, as for instance in New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277, speaking of the applicant's false answer concerning "Hodgkin's disease," held such a disease as increased the risk of loss as a matter of law, the Court observed [page 282]: "Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, in after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements, are avoided."

And it is in harmony also with the observations of this Court in Sovereign Camp, W. O. W. v. Thompson, 234 Ala. 216, 174 So. 761, as to the questions of misrepresentations as to health "were material facts that increased the risk that affected, or was calculated to affect, the conduct of the defendant in the issue and delivery of the policy." [Page 763.]

The Florida court in Mutual Life Ins. Co. v. Denton, supra, 112 So. 54, after observing that "an applicant for life insurance should exercise toward the company to which he applies for it the same degree of good faith which the company is required to exercise toward him and which he rightly expects," concludes with the following: "It would seem to be unnecessary to cite authorities in support of the proposition that the disclosure sought by the question was as to a material fact necessary to be ascertained to enable the company adequately to estimate the nature of the risk in the event it should, in view of all the facts, issue the policy, and that an untrue answer would vitiate the policy."

The Court of Appeals of our State in First National Life Ins. Co. v. Maxey, 25 Ala.App. 289, 145 So. 589, gives expression of a view in harmony with these decisions, though the question seems not to have heretofore been presented to this Court. But we find ourselves in full accord with these authorities and conclude that the false answer in his application to the inquiry as to a previous rejection for life insurance was material to the risk as a matter of law, and such defense being undisputably established, defendant was due the affirmative charge upon this issue.

Plaintiff relies upon General Acc., F. & L. Assur. Corp. v. Jordan, 230 Ala. 407, 161 So. 240, and Sovereign Camp, W. O. W. v. Gibbs, 217 Ala. 108, 114 So. 915, for a submission of the matter for the jury's determination. But a reading of these cases discloses their dissimilarity to the instant case, and that the question here considered was in no manner there involved. We do not see that these authorities in any way militate against the conclusion here reached.

As illustrative of the soundness and justness of the rule established by the authorities, that a false answer concerning previous rejection for insurance presents a good defense, are the facts as disclosed in this case.

It is without dispute that arteriosclerosis is a very serious disease and actually increases the risk of death, and has a hereditary tendency. The American National Life Insurance Company had rejected insured's application in May, 1935, and a letter to that effect was forwarded insured. He obtained the certificate here sued upon in November following.

In his application to the American National Life Insurance Company insured stated that his father died at the age of fifty-six of cerebral apoplexy, one of his brothers at the age of thirty, and a sister at the age of thirty-five of the same identical illness, cerebral apoplexy. But in his application to defendant order, it is stated the father died of malarial fever, his brother of flu, and his sister of pneumonia. This great discrepancy in the two applications is referred to only as illustrative of the soundness of the rule, but in no manner intended as an indication it was at all necessary to be shown. The authorities lay no stress upon any such requirement.

■ Counsel for plaintiff insist that insured must be shown to have known of his rejection in order to constitute the false answer a defense. But insured had warranted his answer was full, complete and true, and his warranty was a part of the contract of insurance (section 8452, Code of 1923), and had further agreed in his application that any untrue statements therein contained or any facts concealed intentionally or otherwise should render the certificate void.

The cases of New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277, Sovereign Camp, W. O. W. v. Thompson, 234 Ala. 216, 174 So. 761; Sovereign Camp, W. O. W. v. Moore, 232 Ala. 463, 168 So. 577, and Sovereign Camp, W. O. W. v. Hutchinson, 214 Ala. 540, 108 So. 520, constitute a sufficient answer to plaintiff's contention in this regard.

Speaking of the second alternative of our statute, "or unless the matter misrepresented increase the risk of loss," the Court in the Horton Case, supra, said: "In fact, under the second alternative, the party making the representation may be wholly unaware that he is misrepresenting the true facts, and may be wholly innocent of any bad motive. In such case, intent or motive is not a material inquiry." See, also, in this connection, 1 Bacon's Life and Accident Insurance (4th ed.) section 293; 4 Cooley's Briefs on Insurance (2d ed.) pages 3235-6; 14 R.C.L. section 258.

While we hold that knowledge on the part of the insured that he had been rejected was not necessary to be shown, yet we do not mean to indicate that the evidence in this record would in any event present a jury question. The inquiry he was called upon to answer was broad in its scope, not only relating to the matter of rejection, but also whether or not he had "ever failed to receive a contract for life insurance for the full amount and kind applied for." Undisputedly he had been rejected and no policy issued. It is clear enough, therefore, that his negative answer was false and must of necessity have been so known to him. And in addition to this, the defendant's proof that the letter (a copy of which appears in the record) was duly sent insured informing him of his rejection is without any contradiction of any character. But as we conclude evidence of knowledge of his rejection was not necessary to be shown, we pursue this question no further.

■ Upon the question of waiver little need be said. It is without dispute that the sovereign secretary of defendant order had no notice whatever of any false statement as to previous rejection for insurance until after this suit was filed, and knew nothing of it when the letter to plaintiff denying liability was written. There could therefore be no waiver of this ground of forfeiture for a failure to make mention of it in the letter. Security Ins. Co. v. Laird, 182 Ala. 121, 62 So. 182. Moreover, the letter expressly reserved the right to make use of any other defenses, and there was of consequence no waiver of such other defenses. Burchfield v. Ætna Life Ins. Co., 230 Ala. 49, 159 So. 235. As to any local officer of the lodge, section 8477, Code of 1923, controls (Padgett v. Sovereign Camp, W. O. W., 218 Ala. 255, 118 So. 456), and there is no insistence of any waiver in that respect.

What has been said suffices to show our conclusion that defendant was due the affirmative charge upon the theory herein indicated, and that its refusal constitutes reversible error.

It appears without dispute that insured did not sign the certificate and acceptance slip which contained further warranty of his good health at that time, and that he had not been sick or injured since the date of his application, but that his signature was affixed thereto by this plaintiff, the beneficiary, while insured was in fact out of the State. Under the laws of defendant order, which became a part of the contract of insurance, one of the conditions precedent to liability was that the benefit certificate be delivered to insured in person, and that he shall have signed the certificate and acceptance slip attached thereto, and that any non-compliance with any

of the several conditions precedent shall be an absolute bar to any claim under the certificate.

Defendant further insists, therefore, that under the following authorities (Patterson & Edey Lumber Co. v. Carolina-Portland Cement Co., 215 Ala. 621, 112 So. 245; Graham v. Caperton, 176 Ala. 116, 57 So. 741; Royal Exchange Assur. v. Almon, 202 Ala. 374, 80 So. 456; National Life & Acc. Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886; Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7; McCutchen v. All States Life Ins. Co., 229 Ala. 616, 158 So. 729; Praetorians v. Hicks, 234 Ala. 451, 175 So. 258; McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349), it was due the affirmative charge upon the theory the contract of insurance had never become effective.

It may well be conceded that this insistence is worthy of serious consideration. But in view of the fact that our conclusion as to the question herein first discussed is decisive of the case, no necessity exists for a determination of the question, and it is of consequence left to one side.

Let the judgment be reversed and the cause remanded.

Reversed and remanded.

THOMAS, BOULDIN, and FOSTER, JJ., concur.