# Richmond

INTER-OCEAN INSURANCE COMPANY v. HAL H. HARKRADER.

December 3, 1951.

Record No. 3833.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Flannagan & Flannagan* and *Curtin & Haynes,* for the plaintiff in error.

*Floyd H. Roberts* and *George M. Warren,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action instituted by notice of motion for judgment by Hal H. Harkrader against the Inter-Ocean Insurance Company to recover on an insurance policy issued by that company to the plaintiff.

The contract of insurance is what is commonly called a preferred accident and health policy, insuring the holder from loss resulting from accidental bodily injuries and loss of time resulting from sickness. No medical examination was required as a condition of the issuance of the policy; but it was based on a written application made and signed by the insured, Harkrader, the applicant, on March 15, 1949, and made a part of the policy.

The application contains among other provisions the following questions and answers:

Question No. 11:

''Has any application for life, accident or sickness insurance been declined, postponed, or withdrawn or policy cancelled or renewal refused? (State particulars).''

To the question the applicant answered: ''No.''

Question No. 15:

''Have you now or have you ever had Tuberculosis, Paralysis, Rheumatism, Neuritis, Appendicitis, Hemorrhoids, Hernia, Varicose Veins, Epilepsy Fits, Syphilis, Heart Disease, Kidney or Bladder Trouble, Peritonitis, Asthma, Hay Fever, Tonsilitis, Goiter, Cancer, or any mental disorder, impairment of sight or hearing, or any other bodily defect or infirmity? (If so, state particulars).''

To the question appellee answered:

''Had some bad teeth which made heart irregular (skip beats) a short time after extraction no more trouble this happened several mos. ago.''

Asked further in question No. 20, if he agreed that the issuance of the policy should be based upon his representation of facts, the plaintiff replied, ''Yes.''

The policy was issued on May 13, 1949. On May 18, 1949, plaintiff was injured in getting into an automobile. Thereafter, he was physically incapacitated for a considerable time with the results hereafter recited. He filed claim against the insurance

company for indemnity in the sum of $4,102, covering loss from his alleged injuries and hospital service in connection therewith.

Upon receipt of plaintiff's claim, the company promptly denied liability on the policy beyond the sum of $90, the amount of the premium paid thereon, and tendered that sum to the plaintiff. The tender was refused and the present action was begun.

The company defended on the ground that the policy was void, in that it had been procured upon the basis of statements made by the plaintiff in his application which were untrue and material to the risk assumed. The court overruled its motion to strike plaintiff's evidence.

The trial resulted in a verdict and judgment in favor of the plaintiff for the sum claimed. To review that judgment, this writ was awarded the company, which makes before us the same contentions advanced and determined adversely to it in the court below. It further assigns error to the granting and refusing of certain instructions.

The record shows that the plaintiff, in getting into an automobile, struck his right knee on the door handle of the car. The blow was painful but the pain lasted only a few moments. No consideration was given to the incident by the plaintiff until May 21, 1949, three days later, when the injured knee began to swell. Dr. Guy Richardson was called to the home of the plaintiff, and removed 52 cc of bloody fluid from the knee joint. Plaintiff said that the condition of his knee from then on was all right but that around the big toe "it stayed cold at one little area." Ten days later, Dr. C. J. Harkrader, a nephew of the plaintiff, examined the plaintiff, and gave the following account of his examination:

"At the time I saw him first, on May 27, 1949, he had very obvious impairment of his circulation in both legs, much worse in the right. The right leg and foot were quite discolored and when you raise the foot until it blanched, why then you could lower it and it took a long time for the color to return, meaning that the blood was slow getting in there, and then when the color would return, it got quite dark. There was much lesser change on the left side.

"Q. Did you reach a conclusion as to what his trouble was?

"A. My conclusion was that he had peripheral arterial disease there.

\* \* \* \* \* \*

"My conclusion was that he had Buerger's disease, an acute exacerbation on the process of the right side following his injury.

"Q. I will ask you again just in what way does that resemble or in what way is it kin to arteriosclerosis?

"A. Buerger's disease is very similar to arteriosclerosis. There is an inflammatory process involved in Buerger's disease, which there is not in arteriosclerosis, and Buerger's disease occurs in a much younger age group. The end result of both is pretty much the same. That is, it is easy to see, if you look at it like a hot water pipe, where you have hard water, your hot water pipe will get a coating on the inside of it, which will gradually narrow the diameter of the opening in that pipe, carrying capacity of the pipe. And the same thing occurs, a similar thing occurs in the arteries from either arteriosclerosis or Buerger's disease."

On June 6, 1949, Dr. W. G. Crutchfield, Professor of Neurological Surgery, examined the plaintiff at the University of Virginia Hospital. Harkrader then told him "* * * that for about a year he had noticed that after walking two or three blocks, his right leg, mainly the calf, would be quite tired and would ache. This pain had gotten worse in recent months."

Dr. Crutchfield diagnosed his condition as peripheral vascular disease of both legs, though more serious in the right, and said that he was suffering from that disease on May 13, 1949, at the time he applied for the policy.

On July 23, 1949, plaintiff was admitted to a hospital at Bristol, Virginia, and his right leg was amputated on July 25, 1949. A medical record of this hospital showed that the chief complaint of plaintiff was an "intermittent claudication for about a year." "Claudication" was defined as being caused by lack of circulation which causes pain in the legs after walking a certain length of time.

It was shown that plaintiff was operated on for appendicitis in the year 1933.

In 1933, the plaintiff took out a non-cancellable accident and health policy with the Massachusetts Protective Association which lapsed in 1944 for failure to pay the premiums. On November 13, 1936, while that policy was in force, he applied again to that Association for an additional accident and health policy. His application disclosed that he had been theretofore "declined additional insurance in 1934." The application was rejected be-

cause of the previous claim experience of the Association with applicant.

J. E. Sheridan, chief underwriter of the defendant company, testified that if a true disclosure had been made by the plaintiff, in answer to questions 11 and 15 of the application, the policy would not have been issued, as both questions were material to the risk when assumed. He further said that if there had been any disclosure that plaintiff was suffering from pain in his legs after walking two or three city blocks, a typical symptom of peripheral vascular disease, the application would have been rejected.

The plaintiff denied that he had any knowledge of his circulatory trouble until he was examined at the University of Virginia Hospital in June, 1949, and claimed that he did not knowingly make any misrepresentation.

No questions of waiver or estoppel are involved.

Section 38-7, Code of Virginia, 1950, reads as follows:

"All statements, declarations and descriptions in any application for a policy of insurance shall be deemed representations and not warranties, and no statement in such application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."

In the note of the revisors of Code, 1919, under section 4220, (now section 38-7, Code of 1950), this was said:

"The revisors were of opinion that if the answer or statement was material to the risk when assumed and was untrue, that no recovery should be had; but that if immaterial, although false or fraudulently made, that it should not bar recovery for the reason that such a statement could not have affected the risk, being immaterial to it. If the statement was material, although innocently made, of course no recovery should be allowed."

The language of section 38-7 is clear and unambiguous. We have had frequent occasion to apply it, and have uniformly held that a misrepresentation of facts material to the risk voids the insurance contract.

Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is

put on guard to make its own inquiries, and determine whether or not the risk should be assumed. A misstatement of material facts by the applicant takes away its opportunity to estimate the risk under its contract. A knowledge or ignorance of such facts would naturally and reasonably influence the judgment of the insurer in making the contract or in establishing the degree or character of the risk or in fixing the rate of premium. *Metropolitan Life Ins. Co.* v. *Rutherford,* 95 Va. 773, 30 S. E. 383; *National Life Ass'n* v. *Hopkins,* 97 Va. 167, 33 S. E. 539; *Metropolitan Life Ins. Co.* v. *Hayslett,* 111 Va. 107, 68 S. E. 256; *Continental Cas. Co.* v. *Lindsay,* 111 Va. 389, 69 S. E. 344; *Talley* v. *Metropolitan Life Ins. Co.,* 111 Va. 778, 69 S. E. 936; *Standard Acci. Ins. Co.* v. *Walker,* 127 Va. 140, 102 S. E. 585; *North River Ins. Co.* v. *Atkinson,* 137 Va. 313, 119 S. E. 46; *Metropolitan Life Ins. Co.* v. *Hart,* 162 Va. 88, 173 S. E. 769; *Mutual Benefit Health, etc., Ass'n* v. *Ratcliffe,* 163 Va. 325, 175 S. E. 870.

See also, *Peoples Life Ins. Co.* v. *Craven,* 190 Va. 124, 56 S. E. (2d) 50.

Cases from other States and the authorities fully support our conclusion in the above cases. *Sovereign Camp Woodmen of the World* v. *Young,* 237 Ala. 288, 186 So. 453, 120 A. L. R. 1419; *Blenke* v. *Citizens Life Ins. Co.,* 145 Ky. 332, 140 S. W. 561; *Mutual Life Ins. Co.* v. *Dibrell,* 137 Tenn. 528, 194 S. W. 581, L. R. A. 1917 E, 554; *Goodbar* v. *Western, etc., Life Ins. Co.,* 89 W. Va. 221, 108 S. E. 896; 29 Am. Jur., Insurance, section 586, page 475, *et seq.;* Annotation 120 A. L. R. 1425.

In 4 Cooley's Briefs on Insurance, 2d. Ed., page 3228, this is said:

"Among the questions invariably asked of the applicant for life insurance is whether he had ever applied to any other company for insurance and been rejected. The purpose of the question is perhaps two-fold—to discover whether the risk has ever been regarded as unsafe by other insurers, and to show the applicant's anxiety for insurance. Whether the applicant has ever applied to other companies for insurance and been rejected is, therefore, regarded as material to the risk, and a statement in this regard whether made as a warranty or as a representation, will, if false, void the policy."

In *Continental Ins. Co.* v. *Kasey,* 25 Gratt. (66 Va.) 268, 18 Am. Rep. 681, this court said: "* * * a false representation of a material fact is, according to well settled principles, sufficient

to void a policy of insurance undertaken on the faith thereon, whether the false representation was by mistake or design. * * * when the insurer is induced to enter into the contract through a misapprehension as to a material matter occasioned by the conduct or declarations of the opposite party, he is entitled to be relieved whether the misapprehension be produced by fraud or innocent mistake; the result is the same in either case." See also, *Goodbar* v. *Western, etc., Life Ins. Co., supra.*

Plaintiff relies on *Green* v. *Southwestern Voluntary Ass'n,* 179 Va. 779, 20 S. E. (2d) 694. The case is not in point. It deals with misrepresentations by an insured as to his relationship with the beneficiary named in the policy. It was shown that the company waived the defense of false representation because the agent writing the policy was told by the insured of the true relationship of the beneficiary to him. Further we held that the misrepresentation, under the facts of that case, "did not increase the chances of loss insured against."

It is undisputed that prior to the issuance of the policy, the plaintiff here had been twice refused insurance; and undergone an operation for appendicitis; had been suffering from effects of a vascular disease in his legs; and that he made no disclosure of these facts in his application. It is also uncontradicted that his representations were untrue and material to the risk, when assumed, and that if correct information had been disclosed in his application, the policy would not have been issued. Consequently, the company, to protect itself against the failure to disclose such material information, had the right to void the policy and return the premiums paid.

Whether a representation is made and the terms on which it is made are questions of fact for the jury; but, when proved, its materiality is a question for the court. *Metropolitan Life Ins. Co.* v. *Hayslett, supra,* at page 112; *Continental Cas. Co.* v. *Lindsay, supra,* at page 392; *North River Ins. Co.* v. *Atkinson, supra,* at page 319; *Flannagan* v. *Northwestern Mutual Ins. Co.,* 152 Va. 38, 67, 146 S. E. 353; Couch on Insurance, Vol. 4, page 3104.

The trial court erred in refusing to strike the evidence of the plaintiff. There was no conflict as to the representations of the plaintiff. They were untrue and material to the risk both as a matter of law and fact.

Since there can be no recovery by the plaintiff because of

his material misstatements, examination of the instructions charged to be erroneous becomes unnecessary.

The judgment complained of must be reversed and set aside and a final judgment entered for the defendant company. The clerk of the lower court will be directed to pay to the plaintiff the sum of $90, that being the amount which the defendant has tendered and paid into the treasury of the court. The insurance company will recover of the plaintiff its costs both in the lower court and in this court.

*Reversed and final judgment.*