# Richmond

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY V. ALBERT R. BUTLER, ADMINISTRATOR OF THE ESTATES OF MARTHA BOWERS MOSELEY AND MARTHA L. COLE, DECEASED.

June 11, 1962.

Record No. 5415.

Present, All the Justices.

*Frank D. Harris* (*Hodges & Harris*, on brief), for the plaintiff in error.

*John Y. Hutcheson* and *Edward A. Crowder*, for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Albert R. Butler, administrator of the estates of Martha Bowers Moseley and Martha L. Cole, deceased, filed a motion for judgment

against State Farm Mutual Automobile Insurance Company to recover the sum of $3,250, with interest and costs, alleged to be due on an automobile indemnity insurance policy. The motion alleged that on January 27, 1959, the Insurance Company had issued its policy to Harvey F. and Willie Belle Ritchie covering the liability of the operator of a certain automobile for the period of one year from January 15, 1959; that on May 27, while the policy was in force and effect, Martha Bowers Moseley and Martha L. Cole were killed by reason of the negligence of Harvey F. Ritchie in the operation of the automobile covered in the policy; that on March 18, 1960, Butler, as administrator of Martha Bowers Moseley, recovered a judgment in the sum of $2,500 with interest and costs against Ritchie, and similarly, as administrator of Martha L. Cole, recovered a judgment in the sum of $750 with interest and costs against Ritchie, for the wrongful deaths of the respective decedents. Hence, it was alleged, the administrator was entitled to recover of the Insurance Company the amounts of such judgments with interest and costs.

The Insurance Company filed grounds of defense, with a bill of particulars, denying its liability on the ground that the policy had been procured through false and fraudulent representations of facts material to the risk assumed, thereby rendered it void *ab initio*.

By consent of the parties the issues were heard by the trial court without a jury and at the conclusion of all of the evidence it struck the defendant's pleadings and evidence and entered judgment in favor of the plaintiff administrator for the amounts claimed. We granted the defendant Insurance Company a writ of error.

The evidence is undisputed. On January 15, 1959, Harvey F. Ritchie and Willie Belle Ritchie, his wife, went to the office of Thomas C. Moore, an agent for the Insurance Company at Petersburg, and stated that they were interested in procuring automobile liability insurance on a Ford automobile owned by them. In accordance with the rules and regulations of his company, Moore propounded to the Ritchies certain inquiries detailed in a printed application concerning their driving records. They were asked to give the "dates of accidents" in which either had been previously involved. To this inquiry the applicants replied, "None." Another question propounded was, "Has license to drive or registration been suspended, revoked or refused for the applicant or any member of his household within the past five years?" to which the applicants replied, "No." The answers to these and other questions were transcribed on the application by Moore.

Since the regulations of the company did not require it, the application was not signed by the applicants.

Based on this and other information received from the Ritchies and detailed in the application, Moore determined them to be desirable risks, received from them a partial payment of the premium, and forthwith issued a "binder receipt" making the insurance coverage effective immediately.

The application was forwarded by the local agent to the underwriting department at Charlottesville, which, based upon the application, issued to the Ritchies the policy in question. It was countersigned January 27, 1959, but in accordance with the binder receipt was made effective from the date of the application, January 15.

About the first of June, 1959, the Insurance Company was notified that Harvey F. Ritchie had been involved in a serious automobile collision in which Martha Bowers Moseley and Martha L. Cole had been killed. Upon receipt of this information the claim department proceeded with the usual investigation, in the course of which it discovered for the first time that several of the answers to the questions in the application upon which the policy was based were untrue. It discovered, and it was shown at the trial of this case, that according to the records of the Division of Motor Vehicles, and contrary to their statements to the company's agent, Harvey F. Ritchie had been involved in automobile collisions on July 5, 1951, and June 5, 1952, and Willie Belle Ritchie on September 30, 1956, and February 14, 1957. These records, introduced at the trial, also showed that contrary to her statement to the company's agent, Willie Belle Ritchie had been convicted of "speeding" on April 8 and June 20, 1958, respectively, and that on account of the latter conviction her operator's license was revoked, effective on that date.

As a result of this information and because of these misrepresentations the Insurance Company wrote the Ritchies that the policy was rescinded as of January 15, 1959, the date on which the risk had been first assumed.

When Butler, the administrator of the estates of the two decedents, instituted actions for their wrongful deaths against Ritchie, the Insurance Company denied liability on the policy and refused to defend these actions on the ground that the policy had been procured through fraud and was therefore void.

At the trial of the present action on the policy the falsity of the answers to which we have referred was shown without contradiction. Moore, the local agent of the company, testified that had these ques-

tions propounded in the application been answered truthfully he would not have accepted the application and would not have issued the binder receipt covering the risk. Indeed, he said, the rules and regulations of his company precluded his doing so.

Frank A. O'Neill, the underwriting superintendent of the company's Charlottesville office which accepted the application and issued the policy, testified that the underwriting department determines from the application whether or not a particular risk is desirable. He said that the answers detailed in the Ritchies application showed that they were a "preferred risk." Furthermore, he said, had the true facts been disclosed, had the company known of the accidents and conviction records of the applicants, or either of them, or that Mrs. Ritchie's operator's license had been revoked, it would not have accepted the risk and issued the policy.

Code, § 38.1-336 (1953 Replacement Volume), reads as follows:

"*When answers or statements of applicant not to bar recovery on policy.*—All statements, declarations and descriptions in any application for a policy of insurance or for the reinstatement thereof shall be deemed representations and not warranties, and no statement in such application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answers or statement was material to the risk when assumed and was untrue."

In applying this statute we have repeatedly said that misrepresentations of facts material to the risk assumed in an application for insurance render the contract void. *Scott* v. *State Farm Mut. Automobile Ins. Co.*, 202 Va. 579, 582, 118 S. E. 2d 519, 522; *Fidelity Bankers Life Ins. Corp.* v. *Wheeler*, 203 Va. 434, 125 S. E. 2d 151; *Inter-Ocean Insurance Co.* v. *Harkrader*, 193 Va. 96, 100, 67 S. E. 2d 894, 897; *North River Insurance Co.* v. *Atkinson*, 137 Va. 313, 321, 119 S. E. 46.

In the present case the undisputed evidence is that in applying for this insurance both applicants made false representations concerning their driving records. It is also abundantly clear that these representations were material, because the risk to be assumed would not have met the company's requirements and the policy would not have been issued had the true facts been known.

It also clearly appears that as soon as the true facts became known to it, the Insurance Company rescinded the contract and so notified the Ritchies.

The policy contained this provision:

"*Declarations*. By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

In striking the defendant's evidence the trial court sustained the plaintiff's contention that the effect of this provision was to exclude and render inadmissible the answers to the questions detailed in the application and prevent the Insurance Company from relying thereon. The argument is that according to the provision the "statements in the declarations" are the "agreements and representations" of the insureds; that the policy was "issued in reliance upon the truth of the representations" and "embodies all agreements existing between" the insureds and the Insurance Company; and that the statements in the application are not a part of the declarations or of the policy.

We do not agree with this ruling of the trial court. We are not here concerned with what constitutes the policy contract between the parties, its terms, or their proper interpretation. Had that been our problem we might have been called upon to say whether under the above provision the statements in the application were excluded as a part of the policy.

Here we are concerned with whether, as a matter of law, the parties entered into any valid and binding contract of coverage for the automobile described in the policy. According to the uncontradicted evidence before us, the binder coverage and the policy upon which the plaintiff relies were procured through the fraud of the insureds, the Ritchies, and hence were void. Whether the Ritchies were guilty of fraud in procuring this coverage depends not upon the terms of the policy, but upon proof of matters beyond and outside that instrument. Indeed, as has been said, the insurance coverage became effective on the date of the application and twelve days before the policy was issued.

There is nothing in the language of the "Declarations" provision to preclude the Insurance Company, in asserting its claim that the insurance coverage was procured by fraud, from showing that it relied upon the truth of the statements made in the application. The statement that the policy was issued in reliance upon the truth of the representations in the declarations does not preclude the company

from showing that it also relied upon the truth of the statements in the application. Compare the more stringent statutory provision involved in *Southland Life Ins. Co. v. Donati*, 201 Va. 855, 114 S. E. 2d 595.

In the recent case of *Bendford v. National Life & Accident Ins. Co.*, 356 Mich. 52, 96 N. W. 2d 113, it was held that a provision that "this policy constitutes the entire agreement between the parties" did not preclude the use of the application or information therein contained, for the purpose of showing fraud in the procurement of the policy, although such application was not attached to and made a part of the policy. The court there reasoned that the use of the application for showing fraud in procurement "does not amount to making it part of the agreement nor to using it for the purpose of contradicting the terms of the agreement. One seeking to void an agreement for fraud is not limited, in proving such fraud, to the provisions of the agreement itself." 96 N. W. 2d, at page 116.

To the same effect see *Bowyer v. Continental Casualty Co.*, 72 W. Va. 333, 78 S. E. 1000, 1001, 1002; *Prudential Insurance Co. v. Niland*, 111 N. J. Eq. 347, 162 A. 605, 93 A. L. R. 369.

*Harris v. State Farm Mut. Automobile Ins. Co.*, C. A. 6, 232 F. 2d 532, cert. denied 352 U. S. 827, 1 L. ed. 2d 49, 77 S. Ct. 40, relied upon by the palintiff, is not inconsistent with this view. That case involved the interpretation of the terms of a policy. The specific question was whether the risk had been increased by the false but not fraudulent statement in the application that the insured was not suffering from epilepsy. It was held that under the language of the "Declarations" provision, almost identical with that in the policy with which we are now concerned, the statement in the application could not be relied upon for that purpose.

The opinion points out that, "Of course, a fraudulent representation in the application inducing the execution of a policy of insurance can generally be availed of to avoid the policy, just as any contract can be avoided for fraud *ab initio*." However, it says, in an interpretation of the contract, "Mere false representations in an application for insurance, as distinguished from a fraudulent inducement or procurement of a policy of insurance, cannot be relied upon when the insurance contract, by its express terms, provides that the policy itself embodies all the agreements between the parties." (232 F. 2d, at page 537.) Thus, the opinion is in accord with our view that such provision does not preclude the use of the statements in the application to show that the policy was procured through fraud.

Since it is conceded that the right of the plaintiff to maintain this action against the Insurance Company rises no higher than the rights of the Ritchies, the insureds, under the evidence adduced the trial court should have dismissed the action and entered a judgment for the defendant Insurance Company. *Ampy* v. *Metropolitan Casualty Ins. Co.*, 200 Va. 396, 399, 400, 105 S. E. 2d 839, 843, and cases there cited.

Accordingly, a final judgment to that effect will be entered here.

*Reversed and final judgment.*