**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Roy Austin STEPHENS, Richard L. Hurtt, Leo Bernstein, Defendants.**

Civ. A. No. 67–C–37–L.

United States District Court,
W. D. Virginia,

Abingdon Division.

June 8, 1970.

S. J. Thompson, Jr., Lynchburg, Va., for plaintiff.

Alvin D. Edelson, Charlottesville, Va., Charles S. Vizzini, Washington, D. C., for defendant.

## OPINION

WIDENER, District Judge.

This rather mixed up case arises as a result of an automobile accident which occurred in Washington, D. C., on or about December 2, 1966.

At that time and place, Stephens was driving a 1964 Ford pickup truck and had a collision with Bernstein. The truck was titled in Hurtt's name. Bernstein sued both Hurtt and Stephens on account of the accident.

On February 10, 1966, there was purchased from Northeast Motor Company, Washington, D. C., the 1964 Ford pickup truck in the name of Richard Lee Hurtt, Palmyra, Virginia. The 'phone number given was of Stephens' 'phone. The sale was made by James A. Watson, a mutual friend of Hurtt and Stephens. Stephens and Hurtt were friends. Stephens says he bought the truck for Hurtt on account of work Hurtt was to do for him on the Stephens farm in Virginia. Hurtt says he allowed the truck to be titled in his name as an accommodation to Stephens.

Following the accident, Nationwide, which had issued a policy of liability insurance to Hurtt, brought this declaratory judgment action to avoid the policy, making Stephens, Hurtt, and Bernstein parties defendant.

Nationwide alleged the following misrepresentations of Hurtt in the application for insurance:

(a) That Hurtt said he owned the truck to be insured when it was actually owned by Stephens.

(b) An implied misrepresentation by Hurtt that he owned the farm in Fluvanna County, where the truck was to be principally garaged.

(c) That he would be the only driver of the truck, when in fact Stephens was the principal driver.

(d) That no driver of the truck had had his operator's license suspended, when in fact Stephens' license had been so suspended.

(e) That no driver of the pickup truck had been on the Assigned Risk Plan, when in fact Stephens was.

(f) That no driver of the pickup had had a traffic violation or police warning within three years.

(g) That no company had refused to insure the owner or any driver within three years, when in fact Stephens had been so refused.[1]

Nationwide also alleged that there was no coverage offered by the policy because it charged Stephens had failed to notify the insurer as soon as practicable, had failed to forward suit papers to the insurer, had submitted to the jurisdiction of the U. S. District Court of the District of Columbia, and had failed to cooperate. It failed to offer any admission or substantial evidence to support any of these latter contentions, did not mention them in its briefs, and apparently has abandoned this phase of the suit. In any event, the court finds as a fact that the last mentioned allegations are not supported by evidence, and they will not be considered further.

In order that the case may finally be decided without another trial, the

---

1. *Caveat.* The point is not raised either by pleadings, memoranda, or argument, and the court specifically does not pass upon the question of whether or not the application form used by Nationwide is so broad in its terms that it is in conflict with the permissive use statute, Virginia Code, Section 38.1–381.

court will discuss each of the contentions of the parties, although there is really one issue around which the entire case turns—that of the admissibility into evidence of the application for insurance. Unless the application is admissible, Nationwide cannot prevail.

To take up the contentions of the plaintiff one by one, assuming for the purposes of argument that the application is admissible:

■ The allegation that the truck was in fact owned by Stephens. The evidence as to whom the truck actually belonged is in hopeless conflict. The court finds that the plaintiff has not proved by a preponderance of the evidence that Hurtt misrepresented the ownership of the truck at the time the application for insurance was made.

■ The alleged implied misrepresentation by Hurtt that he owned the farm in Palmyra. This is not supported by the evidence. In fact, the uncontradicted evidence is to the contrary.

The allegation that Hurtt said he would be the only driver of the truck. This is not supported by the evidence. Hurtt told Nationwide that he would be principal driver and there would be occasional drivers. He gave Nationwide the names of no other drivers. "It never really came to that much discussion." The fact that Stephens would be an occasional driver is corroborated by Stephens' testimony, but Hurtt says that Stephens would be the principal driver.

The allegations that Hurtt said no driver had had his license suspended and that no driver had been on Assigned Risk Plan. Hurtt answered both of these questions "no" as alleged by Nationwide, although the answers should have been "yes". He says he thought the questions referred only to him, yet he knew at the time that Stephens would be using the truck. The answers to these questions are material to the risk and are untrue.

Hurtt answered "no" to the question as to whether any driver of the pickup had had a violation or police warning within three years. Stephens' record of convictions shows that all of his violations were more than three years prior to the date of the application.

The allegation that Hurtt said, no company had refused to insure the owner or any driver within three years. This was answered "no" by Hurtt, when in fact Stephens had been refused insurance. This answer was material to the risk and was untrue.

Nationwide takes the position that such untrue and material answers give it the right to avoid the policy from its inception. The defendants rely on an estoppel of Nationwide to assert such a policy defense, and further rely on Virginia Code § 46.1–511, in particular subsection (f), which in part is to the effect that no statement made by the insured shall bar recovery within the minimum coverage limits required by the Safety Responsibility Act.

■ The court agrees with the position of Nationwide. In the case of State Farm Mutual Insurance Company v. Butler, 203 Va. 575, 125 S.E.2d 823 (1962), the Virginia court, in a case essentially on all fours with this case, held that:

"* * * misrepresentations of facts material to the risk assumed in an application for insurance render the contract void." 203 Va. 575, 578, 125 S.E.2d 823, 825.

■ The cases of Connell v. Indiana Insurance Company, 334 F.2d 933 (4th Cir. 1964) and Stillwell v. Iowa National Mutual Insurance Company, 205 Va. 588, 139 S.E.2d 72 (1964) have held that the provisions of the Virginia Safety Responsibility Act, which includes Va. Code § 46.1–511, do not apply to policies voluntarily procured such as the policy in question, but only to policies certified as proof of financial responsibility under the statute.

■ In the opinion of the court, neither the defense of estoppel nor Va. Code § 46.1–511 is available to the de-

fendants as a bar to this action for declaratory relief.

The court now considers the issue upon which Nationwide's case necessarily must stand or fall, that is, whether the application for insurance is admissible into evidence. The defendants contend that the application is inadmissible for the reason that Hurtt did not sign the application; that the information contained in the application was based on hearsay information; and that no proper foundation was laid by the secretary to show that it came under the Federal Business Records Act, 28 U.S.C. § 1732.

The uncontradicted testimony shows that the agent's secretary took information from Hurtt in longhand and later filled out the application. Not more than two days later, the agent approved the typewritten application filled out by the secretary from the longhand notes, signed Hurtt's name to it, and forwarded it to the underwriting department.

■ The Federal Business Records Act[2] was intended to relax the strict common law rule requiring identification of book entries by all parties making them, but was not intended to do away with the requirement that a record, to be admissible, must carry with it some guarantee of trustworthiness. Hartzog v. United States, 217 F.2d 706 (4th Cir. 1954). Admissibility of any business record under that section must be determined by the character of the records and their earmarks of reliability acquired from their source and origin and the nature of the compilation. United States v. Grow, 394 F.2d 182, 205 (4th Cir. 1968). The secretary who took the information did not appear at the hearing to testify. However, testimony of the Nationwide agent, corroborated by an underwriting manager, established that the record was made in the usual course of business within the meaning of the statute. Defendants suggest that the application is inadmissible for the reason that Hurtt's name was signed by the agent. The court interprets that circumstance as affecting the weight of the evidence rather than its admissibility.

■ The judge who presided at the *ore tenus* hearing had the opportunity to hear and observe the witnesses as they testified. He necessarily found that the application was admissible as being in the regular course of business, and he had the opportunity to judge the credibility of the witnesses. Fed.Rules of Civ.Proc., Rule 52(a); Nationwide Mutual Insurance Company v. DeLoach, 262 F.2d 775 (4th Cir. 1959). The defendants failed to make a showing of unreliability so complete as to overcome the presumption of verity. See Thomas v. Hogan, 308 F.2d 355, 361 (4th Cir. 1962). It is the opinion of the court that the application for insurance is admissible into evidence under the Federal Business Records Act.

To sum up: The case of State Farm Mutual Automobile Insurance Company v. Butler, 203 Va. 575, 125 S.E.2d 823 (1962) is controlling here and Nationwide must prevail.

An order is this day entered granting declaratory relief as prayed for by Nationwide.

2. The Federal Business Records Act, 28 U.S.C. § 1732, provides in pertinent part: "(a) In any court of the United States * * * any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. * * * *"