**Leo BERNSTEIN, Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY et al., Appellees.**

**NATIONWIDE MUTUAL INSURANCE Company, Appellant,**

v.

**Roy Austin STEPHENS et al., Appellees.**

**Roy Austin STEPHENS, Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY et al., Appellees.**

**Nos. 14949-14951.**

United States Court of Appeals, Fourth Circuit.

April 24, 1972.

Noel H. Thompson, Arlington, Va. (Charles S. Vizzini, Washington, D. C., on brief), for appellant in No. 14,949 and for appellee in Nos. 14,950 and 14,951.

S. J. Thompson, Jr., Lynchburg, Va., for appellant in No. 14,950 and for appellees in Nos. 14,949 and 14,951.

Alvin D. Edelson, Charlottesville, Va., for appellant in No. 14,951.

## ORDER

The court having granted rehearing in banc, and the opinions of the panel heretofore filed having been withdrawn, the order of the lower court, 313 F.Supp. 890, is affirmed by an equally divided court.

## ALBERT V. BRYAN, Circuit Judge:

Severe injuries were suffered by Leo Bernstein on December 2, 1967 in a collision in the District of Columbia involving a 1964 Ford pick-up truck driven by Roy Stephens. Nationwide Mutual Insurance Company was insurer of the truck under a policy issued in the name of Richard Hurtt but also covering Stephens as a permissive driver. With jurisdiction based on citizenship diversity, Nationwide sued Stephens, Hurtt and Bernstein in the United States District Court for the Western District of Virginia to obtain a declaratory judgment to the effect that the insurance policy issued to Hurtt was void ab initio, in that it had been procured by material misrepresentation of fact.

The governing law is that of Virginia where the insurance policy was issued. Capers v. White, 195 Va. 1123, 81 S.E.2d 597 (1954). The District Court rescinded the policy for fraud in its procurement, awarding Nationwide a declaratory judgment as prayed. This conclusion is, I think, a mistaken resolution of the dispute.

Exoneration of the insurer is, in my judgment, violative of the words and intent of the law of Virginia, as well as unwarranted by the evidence. Indisputably, Hurtt, the applicant for the insurance, deceived the insurer, but my point is that the deception cannot be visited upon an innocent and injured third party such as Bernstein. This is because automobile liability insurance is no longer simply of private concern, for the public's interest is of equal importance. The rightful remedy is recovery by the insurer of its loss from the deceiver.

I. It is critical that the applicant for the policy—the primary insured—was not driving or occupying the car when it struck Bernstein. In that circumstance, and with the Virginia statutes in view, must the policy application be read in this case. These statutes are applied with an eye to the attainment of their purpose: protection of the public. So understood, the enactments render irrelevant the questions and fraudulent answers on which the insurer is now allowed to escape liability. They were irrelevant because they involved information made inconsequential by the protective statutes.

The questions were these: (1) "Has *any* driver had his operator's license suspended or revoked?"; (2) "Is or has *any* driver been on Assigned Risk Plan?"; and (3) "Has any company refused to insure owner or *any* driver in past 3 years?" [1]  (Accent added.)

Their reference to *any* driver, not just the policyholder, in relation to the Virginia statutes is the focus of this opinion. In my judgment they went beyond the limitations of the statutes and, therefore, the answers do not justify rescission of the insurance.

Indeed, the District Judge in his opinion queried whether this interrogation was not broader than the Virginia stat-

---

[1] While the applicant, Hurtt, did not come within these inquiries, he knew that Stephens, who was driving with Hurtt's permission when Bernstein was injured, had once had his driver's license revoked.

There is no indication in the record whether or not it had been restored. Hurtt did not know whether Stephens had been refused insurance or had been in the statutory assigned risk program.

**508**

utes tolerated. He did not pass on the proposition since the plaintiff Bernstein had not pressed it. This court ought nevertheless to notice it. The facts in this regard are not in dispute, and Bernstein should not be relegated to another suit to establish it.

The apposite Virginia statutes stress that every owner's policy—through "the omnibus clause"—shall insure not only the person named therein as the insured, but also *any other person* using the car with the consent of the named insured.[2] Of course, a salient aim of this requirement is to establish a more comprehensive provision for the public by conferring financial answerability upon *any* driver. To allow an insurance carrier to condition the policy on representations as to persons other than the owner, or members of his household who might use the car, would impermissibly confine effectuation of the statutes' objective. If not satisfied of the prospective users' qualifications the insurer may, of course, refuse to allow the insurance. With the policy once issued, however, the carrier is bound by law to honor, for the benefit of the public, its coverage of *any* permissive user of the car. Hence, no matter the record of any driver, besides the applicant for the policy or members of his household, the statute guarantees the driver's solvency.

The public, indeed even the named insured, would never be certain of indemnity, if the instant questions and answers were to stand as conditions in the policy. Each time the owner let another use his car, he would have to explore these questions lest the policy be forfeited. Even then the answers would have to be satisfactory to the insurer. Such an obligation would be insufferable to the policyholder. Indeed, it could wholly elude the public protection the statutes demand of the insurer.

That the insurer cannot exact representations from the applicant which exceed the scope of the State statutes was squarely declared in Zepczyk v. Nelson, 35 Wis.2d 140, 150 N.W.2d 413 (1967). There the named insured had represented that he would drive the automobile "100 per cent of the time". Notwithstanding, his son drove the car and injured the plaintiff. The insurer denied liability because of the breach of the representation. In disallowing this plea, the Court said:

> "Even if the insured had knowledge of the 100% clause in the application when he signed it, and that the statement was false and made with the intent to deceive or increased the risk or contributed to the loss, the insurance company could not avoid liability to an *innocent third person* on the grounds that the car was driven by a person other than the named insured and who could not be excluded under the provisions of sec. 204.34(1) [which lists grounds on which a policy could not be refused]. Such a situation would permit an insurance company to avoid liability by inserting provisions in an application which they could not avoid under circumstances described in sec. 204.34(1)." Id. at 145, 150 N.W.2d at 416 (accent added).

With regard to the irrelevance of the questions and answers now invoked by the insurer to defeat the policy, it is significant that the omnibus clause has been given a very liberal construction. American Auto. Ins. Co. v. Fulcher, 201 F.2d 751 (4 Cir. 1953). There the Court, at p. 756, went so far as to say in reference to the coverage of persons other than the insured:

> ". . . the Virginia decisions make it clear that the statutes applicable to the present controversy, being remedial in nature, are to be liberally construed to subserve the *public policy* manifest therein. It is also evident that, to support liability predicated upon implied permission, *it is not necessary that the owner of the automobile be aware of the identity of the person*

---

2. Va.Code of 1950, as amended, § 38.1–381 (Cum.Supp.1968) (currently found in Supp.1971). All statutory references in-

fra are to this code unless otherwise indicated.

*operating it*; or know of the particular use being made of it at the time of the accident." (Citations omitted and accent added.)

It is evident that Nationwide has attempted to restrict the force of the omnibus clause, thereby violating its duty to the public, including Bernstein. The company should not be allowed to avoid its undertaking so readily.

II. There is an additional ground to hold Nationwide to reimbursement of Bernstein. In Virginia an applicant for the registration of an automobile must furnish to the Division of Motor Vehicles his certificate that it is covered by bodily injury and property damage liability insurance or other financial assurance.[3] The policy must insure "the named insured and any other person responsible for the use of or using the motor vehicle . . . with the consent, expressed or implied, of the named insured, against liability for death or injury sustained . . . as a result of negligence in the operation or use of such vehicle . . . by the named insured or by any such person . . . ."[4] Obviously, the statute renders the insurer chargeable for money damages awarded against the owner or driver in an action brought by *anyone* who was injured through the negligent operation of the vehicle. Thus the general public is a third-party beneficiary to the contract of insurance. Cf. Barrera v. State Farm Mutual Auto. Ins. Co., 71 Cal.2d 659, 674–677, 79 Cal.Rptr. 106, 117–118, 456 P.2d 674, 685–686 (1969).

Hence, the policy is not a private one solely between the insurer and the policyholder, vitiable at any time by the act or omission of either. Even if the in-surer may for fraud in its procurement *rescind* a policy ab initio and withdraw its protection of the named insured alone, this power ought not to exist *indefinitely* as against the public's right of protection. This would allow dissolution of the public interest at any time without fault imputable to an injured third party. If the insurer is *always* possessed of the potential of rescission ab initio, the result is to cloud the protection which the State intends for the public. The question emerges does this voidability continue alive year after year, to be disclosed only upon the filing of a claim?

To me such latent defeasibility is contrary to the State's intendment. It is misleading too. The insurer is generally well aware, as instantly, that because of the insurance the car is permitted upon the highways.[5] As a sleeper, the insurer holds the power of cancellation, revealed only upon the happening of the very event the statutes fear.

Application for the policy in suit was submitted February 10, 1966; the claim of appellant Bernstein arose December 2, 1966—10 months later. If the insurer can renounce a policy for misrepresentation 10 months from its delivery, it may do so 10 years afterwards. All the while the insurer is receiving premiums upon a responsibility which it may disavow through an alleged infirmity born at the very inception of the policy. This is the prospect the opposing opinion presents to the public beneficiaries of automobile liability insurance.

While in Barrera v. State Farm Mutual Automobile Insurance Company, supra, 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969), the question related to the

---

3. §§ 46.1–167.1 and –167.2 (Repl. Vol. 1967). (Erroneously, but immaterially, in the first opinion this court referred for this obligation to the Virginia Motor Vehicle Safety Responsibility Act, §§ 46.-1–467 and –468(a), the two statutes not being substantially different in this particular.) If there is no such insurance, the registrant must pay a fee of $50. However, this charge does not provide any insurance whatsoever and is of no benefit to the registrant. It is not material in this case because the owner did not elect to forego insurance protection.

4. § 38.1–381, supra, (Cum.Supp.1968) (currently found in Supp.1971).

5. Here the insurance policy has been relied upon and not the fee of $50, described in footnote 3, supra, as authorization to go upon the highway.

duty of the insurer to investigate the truth of the application answers, the opinion contains this trenchant epitome of the power to be upheld in the instant case:

> "A rule which would permit an automobile liability insurer *indefinitely* to postpone determination of the validity of a liability policy and to retain its right to rescind the policy . . . defeats not only the public service obligations of the insurer but also the basic policy of the Financial Responsibility Law. That law aims 'to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles.' " Id. at 670, 79 Cal.Rptr. at 114, 456 P.2d at 682–683 (citations and footnote omitted; accent added).

The remedy is to refuse rescission where the policy has been in effect without repudiation after a reasonable time for investigation of the risk. Thirty days would seem abundant to assure this exploration in the public's protection. This is but an equitable imposition which the insurer should satisfy before begging the equitable remedy of rescission. Carter Coal Co. v. Litz, 54 F.Supp. 115, 124 (W.D.Va.1943), aff'd, 140 F.2d 934 (4 Cir. 1944). To ask for vacation of the policy otherwise, as Nationwide does here, is to come into equity without clean hands.

The insurer complains that this obligation would be impracticable, in that the company could not efficiently or expeditiously uncover the untruths of an applicant's responses to its questions, especially those touching upon the future use of the vehicle and the qualification of the would-be licensee. The immediate replication is that Nationwide procured the information quickly enough when it was called upon to pay. In any event, so far as the record shows, no investigation at all was even attempted before the policy here was issued. Likewise, at the time the policy was renewed for a second six months' term, no such inquiry was made. Incidentally, honesty of the applicant to whom a policy is issued is one of the risks the insurer has chosen to assume. Something less is not expecting too much for the protection of the life and safety of the public against automobile casualties. After all it was the insurer, and not Bernstein, who made the fraud possible.

The contention urged in this opinion does not defy the decisions of the Supreme Court of Virginia or the injunction of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that we bow to them. In no instance do I find the Virginia Court having to consider either (a) the insurance application's conflict with the demands of the omnibus clause, or (b) the insurer's power, unlimited in duration, to obliterate the public protection of a policy because of an invalid application, the company all the while charging and receiving premiums.

With its constant vigilance to have the decisional law of the State fit its problems, I am confident the Supreme Court of Virginia will not tolerate such erasure by an insurer of *its* responsibilities. Noteworthily, the Court recently overturned two ancient common law doctrines when they appeared unjust or obsolete. Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971), and Surratt v. Thompson, 212 Va. 191, 183 S.E.2d 200 (1971).

If the insurer can succeed in its offensive to nullify the policy here, then it has succeeded in shifting its contingent liabilities to the injured and uninjured members of the public, who thus have had only a semblance of protection. Consequently, there is no certainty of indemnification afforded by insurers' apparent compliance with the State's requirements.

In sum, when a policy applicant has defrauded the insurance carrier, then the latter's recourse is against the cheater for damages for the imposture. It is no answer to say that the insured may not be solvent, for that is the very reason for the State's insistence upon insurance. The company should not be permitted to pass any such loss on to the public.

The decree on appeal should be vacated and judgment delivered for the injured appellant.

Judges SOBELOFF and CRAVEN authorize me to state that they concur in this opinion.

SOBELOFF, Senior Circuit Judge:

Judge Bryan's opinion for the original panel, of which I was a member, convinced me. Further consideration of the case has not persuaded me to alter that position in the en banc proceeding.

I join Judge Bryan in his opinion.

